# Equitable Life Assurance Society of United States v. Burns.

(Decided March 20, 1934.)

(As Modified on Denial of Rehearing June 19, 1934.)

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT and E. B. COCHRAN for appellant.

J. L. HARRINGTON and Z. WELLS for appellee.

Opinion of the Court by Judge Ratliff—Reversing.

This is an action on a group policy issued by the Equitable Life Assurance Society of the United States and the Consolidation Coal Company, a corporation engaged in mining and shipping coal in Johnson county, Ky. The coal company employs a large number of men in its mines and in order to protect the lives and health of its employees, it entered into a contract known as group insurance. The terms and conditions, among other things, were that the coal company would carry a death and health policy for each of its employees in Johnson county, and the insurance company contracted to carry the insurance for its employees insuring their lives and health in accordance with the provisions of the policy, so long as they continued in the employment of the coal company. The coal company required its em-

ployees under the age of 60 years to carry such insurance as per terms of the group policy. The coal company paid the insurance premiums on the policy and deducted from the wages of the insured employees a sum sufficient to pay their respective proportionate parts of the premiums due and paid under the group policy.

Edgar Burns was an employee of the coal company to whom certificate of the insurance was issued, in accordance with the provisions of the group policy, whereby the insurance company agreed to pay Burns $31.71 per month for 60 months for total and permanent disability occurring while he was in the employment of the coal company, and $12 per week for a maximum period of 13 weeks for temporary total disability occurring while he was in the employment of the coal company.

While under the age of 60, and the policy was in full force and effect, Burns claims that he received an injury while engaged in his work in the mines, resulting in partial stiffness of his ankle and varicose veins of his leg, and, as result of such injuries, he became totally and permanently disabled for life from engaging in any occupation or performing any work for compensation or financial value. He received the injury complained of on January 14, 1932, and was paid $12 per week for temporary total disability as result of the injury to his ankle, up to March 4, 1932, at which time he had sufficiently recovered of the injury to his ankle and returned to work. It does not appear from his testimony or the testimony of the doctors who treated him that he was treated for the injury to the ankle any more after March 9, 1932. However, he was permitted to recover the sum of $116 after March 9th, for the temporary total disability resulting from the injury to his ankle. A clause in the insurance policy reads:

"The insurance under this policy shall not cover death or disability due to injury * * * sickness or diseases for which the insured employee is not treated by a physician."

It is insisted for the insurance company that the court erroneously permitted Burns to recover for the temporary disability based on the injury to his ankle for the period which he was not treated by a physician. There is evidence conducing to show that Burns was

treated after March 9, 1932, by physicians for the injury to his leg, but there is no evidence tending to show that he was treated for the injury to his ankle after that date.

This provision of the policy is binding upon both the insured and the employer, and must be enforced like any other provision of the policy. It was error to permit Burns to recover for disability for which he was not treated by a physician. Equitable Life Assur. Soc. of U. S. v. Branham, 250 Ky. 472, 63 S. W. (2d) 498; Provident Life and Accident Ins. Co. v. Harris, 234 Ky. 358, 28 S. W. (2d) 40; Republic Life and Accident Ins. Co. v. Gambrell, 248 Ky. 63, 58 S. W. (2d) 219.

It is next insisted that the evidence is insufficient to support the jury's finding that Burns' disability is presumably total and permanent.

Dr. Picklesimer, testifying for Burns, stated that he examined him and found that he had an inflamed condition of the canal of the left ear, pyorrhea of the gums, and varicose veins of the right leg, and a partially stiff ankle. The doctor was asked whether or not in his judgment the plaintiff was able to do practically the same kind and character, the same class of work, substantially the same that he could prior to the time of his injury. He answered:

"I would say that before his condition existed he would have been able to do all the duties of a miner."

He was asked the second time substantially the same question as above stated, and he said:

"I don't believe that it would be safe for him to do work of that kind. He might get injured, he might get a broken place in the skin and have varicose ulcers develop, and then the size of a man and with a stiff ankle and the condition of his feet and arches, he would be very much handicapped in attempting to do the ordinary duties of a miner. He would be suffering pain at all times that he was attempting work."

"Q. Say whether or not in your judgment his disability is temporary or permanent. A. They are permanent."

It will be noticed that the doctor did not state that

his disability was total. He merely said in substance that the condition which he found was permanent. In answer to a following question whether or not he was permanently and totally disabled from performing the usual and customary duties of a coal loader, he said: "Yes, sir, it is my best judgment he is totally and permanently disabled."

Dr. Picklesimer stated that the stiffness of Burns' ankle would not render him permanently and totally disabled. He said that he had taken into consideration all the things that he had mentioned, which in his judgment rendered Burns totally and permanently disabled as a coal miner. Dr. Castle testified to substantially the same state of facts as Dr. Picklesimer.

Dr. D. H. Daniels and Dr. Spencer were introduced for appellant, defendant below, and testified in substance that Burns' condition was not such as would render him permanently and totally disabled from performing the work of a coal miner. They testified that they knew of numerous men working and performing the duties of a coal miner who had a worse condition of varicose veins than Burns had. Drs. Picklesimer and Castle, who testified for Burns, seemed to have based their conclusions on the ground that it would be unsafe for Burns to try to work because he might receive an injury to his leg which might result in varicose ulcers or further complications. Their conclusion that he is permanently and totally disabled seemed to be based upon what might happen to Burns in the event he should receive a further injury of his leg, and not on his actual present condition. It is admitted by all doctors that the stiffness of his ankle would not render him totally and permanently disabled. It is common knowledge that the minor condition of his ear and gums would not produce such disability. Therefore, the question is whether or not varicose veins of his leg is a permanent total disability. The doctors who testified for the respective parties in this case stated in majority of cases varicose veins could be practically cured by operation or other modes of treatment. It is not shown that Burns had or offered to submit to an operation, or had received any treatment by physicians except to merely bandage his leg. Furthermore, aside from the testimony of doctors, it is common knowledge that varicose veins is not considered a serious or incurable disease. It is equally well known that numerous people have

varicose veins and continue to work at their daily avocations. It must be conceded, however, that such condition, no doubt, is a more or less handicap and a partial disability. But the instances are rare, if any, where they produce a permanent and total disability for life as contemplated in the insurance policy sued on. Little doubt exists that Burns has at least a partial disability. But excluding from the record the conclusion of the doctor based upon the facts heretofore stated, there is but slight evidence conducing to show that Burns' disability is presumably permanent and total for life. In Dossenbach et al. v. Reidhar's Ex'x et al., 245 Ky. 449, 53 S. W. (2d) 731, 737, it is said:

> "The opinions of expert witnesses upon subjects of common knowledge have no more probative value than the opinions of other witnesses. * * * When expert opinion is rested upon simple facts of life and everyday occurrences, it possesses no more weight or value than that of any other intelligent person, since upon matters of common knowledge and everyday experiences, ordinarily intelligent man can make appropriate deductions and derive correct conclusions."

In the opinion, supra, the law relating to expert testimony is very elaborately discussed and a reading of that opinion, and cases cited therein, measured to the facts set out in the case at bar, the conclusion is inescapable that the evidence is insufficient to support the finding of the jury that Burns is permanently and totally disabled for life as a coal miner. Conceding, however, that he may be partially disabled at the present time, we do not think that varicose veins of one leg would render him totally and permanently disabled for life.

At the most it is only shown that Burns' condition might result in serious complications and possibly total and permanent disability for life in the event he should receive additional injuries to his leg. But we cannot speculate on what might happen. The question is whether or not in his present condition he is totally and permanently disabled for life from performing the work of a coal miner. In the case of Louisville Ry. Co. v. DeMarsh, 203 Ky. 231, 262 S. W. 13, 14, the court said:

> "But after all the jury is not permitted to invade the field of speculation or to base its verdict

on surmises not supported by some tangible and substantial testimony."

See, also, Consolidated Coach Corp. v. Eckler, 248 Ky. 309, 58 S. W. (2d) 582; Kimmie v. Terminal R. R. Ass'n of St. Louis (Mo. Sup.) 66 S. W. (2d) 561.

It has been repeatedly held by this court that testimony of professional or expert witnesses to the effect that injuries might be permanent or that there is a possibility of permanency is not such positive and satisfactory evidence required to establish proof of permanency. Herndon v. Waldon, 243 Ky. 312, 47 S. W. (2d) 1047.

It is our conclusion that the verdict of the jury is flagrantly against the weight and preponderance of the evidence and, therefore, the judgment must be and is reversed and remanded for proceedings consistent with this opinion.