## Mutual Life Insurance Company of New York v. Dause (two cases).

(Decided June 19, 1934.)

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT, D. L. STREET, R. LEE BLACKWELL and BEN V. SMITH & SON for appellant.

B. J. BETHURUM and H. H. DENTON for appellee.

Opinion of the Court by Judge Ratliff—Reversing.

In March, 1921, the Mutual Life Insurance Company of New York (hereinafter referred to as the Mutual Life) issued to C. P. Dause, a farmer of Pulaski county, Ky., two insurance policies in the sum of $5,000 each in case of death, and each of which contained a "total and permanent disability" clause, by which the Mutual Life contracted (a) to pay Dause $50 per month in the event of his disability; (b) these provisions were to accrue to Dause only when he could furnish due proof to the company at its home office that he has become totally and permanently disabled by bodily injury or disease, so that he is, and will be permanently, continuously, and wholly prevented thereby from any work for compensation, gain, or profit, and from following any gainful occupation.

By the policy, the Mutual Life was given the right to demand annual proof of the disability, the furnishing of which was made a condition precedent to the right to receive such disability payments, and if the Mutual Life so desired, the insured was required to furnish such proof of disability from time to time, but not oftener than once a year, and, if the insured failed to furnish such proof, no further premium was to be waived nor further income paid.

In the early part of 1922, Dause became ill, and upon consulting physicians he was advised that he had pulmonary tuberculosis. The doctors advised Dause to go West, which he did, and he stayed in a sanatorium in Colorado for a few months. He then returned to Kentucky in the latter part of 1922, and was advised by his doctor to move off his farm because it was damp and foggy, and he moved to Somerset and engaged in running a rooming and boarding house for a few months.

Immediately after it was determined that Dause had tuberculosis, he applied to the Mutual Life for disability benefits under his policy, and the Mutual Life waived the payment of premiums for the year 1922 and paid Dause for disability as stipulated in the policy. In March, 1923, the Mutual Life demanded an examination of Dause to ascertain whether or not he had recovered from his disability, and Dr. Peabody of Louisville, Ky., the medical referee for the Mutual Life,

made this examination. Dr. Peabody reported that the tubercular condition had been arrested, but, in view of the history of the case as related by Dause, Dr. Peabody gave Dause the benefit of any doubt, and recommended payment of benefits for the year 1923, and the Mutual Life waived payment of all premiums for that year and paid Dause accordingly. In March, 1924, the Mutual Life again demanded an examination of Dause. This examination was also made by Dr. Peabody, and, as result of the examination, Dr. Peabody concluded that Dause's tubercular condition was definitely arrested and that he was able to go back to work. Upon receipt of this report from Dr. Peabody, the Mutual Life, on April 8, 1924, wrote Dause the following letter:

"Mr. C. P. Dause, care of General Delivery, Lexington, Kentucky.

"Dear Sir: We beg to advise you that it is the decision of the Disability Committee that in view of the information at hand the Company is under no legal obligation to waive payment of the 1924 premiums under the policies 2862420-2 and contine the payment of disability benefits.

"From our records it would appear that the premiums under these policies amount to $212.30 each and fell due on March 21, 1924. According to the terms of your policy you have until April 21, 1924, in which to make payment.

"Very truly yours,

"A. P. Mallou,

"Manager."

Dause made no response to the letter nor made any payments of the premiums. In the year 1924 Dause worked a while in Lexington for the Gulf Oil Company. In 1926 he moved to Cincinnati and secured employment with the Corcoran-Brown Lamp Company, for which he worked until the early part of 1929, with the exception of short visits back to Somerset each year.

On April 9, 1926, just before Dause moved to Cincinnati, he applied to the Mutual Life for a reinstatement of his policy. For this purpose he went to Lexington and was examined by Dr. Coleman. At that time, according to the evidence of Dr. Coleman, Dause

weighed 204 pounds, was in sound health, had completely recovered from his tubercular affliction, and was able to work. The application was rejected by the Mutual Life because of Dause's prior tubercular history. As a part of Dr. Coleman's deposition, the questions answered in the application are copied in the record, a part of which we note: "Appendicitis operation in 1907; no complications, no remaining effects; complete recovery, 1907." He also listed "tuberculosis, number of attacks 1922, 1923, duration two years; complications, none; no remaining effects. Date complete recovery, 1923."

Dr. Coleman said that he asked Dause if he had recovered from his tuberculosis, and Dause said he had, and further stated that the was in good health.

The record discloses that, after Dause went to Cincinnati in 1926, he worked the balance of that year, receiving an average of $23 each week, or a total sum of $638.25, from June 16th to the end of the year. During the year 1927, he received the total sum of $1,590, for the year 1928, $2,371, and for part of the year 1929, $404. It is shown, however, that his work was that of a "lamp-buffer" and other light work about a factory. In 1931 Dause returned to Pulaski county, and it does not appear that since his return he has had any regular employment or occupation.

During all this time, since the letter of April 8, 1924, quoted above, Dause had made no demands on the company for payment for disability, filed no proof of disability, and paid no premiums on his policy. He had had no correspondence or communication with the Mutual Life except the application for reinstatement in 1926, as above indicated. In September, 1932, approximately 8½ years after the letter of April 8, 1924, and without any demands or notice to the Mutual Life, Dause instituted suit in the Pulaski circuit court on each policy for the full amount of the alleged accrued benefits under the policies. The suit was removed to federal court at Lexington, Ky., and, after the evidence had been taken, Judge Cochran indicated that he was of the opinion that Dause was not entitled to recover for various reasons (not necessary to recite herein), whereupon Dause's counsel dismissed the suits without prejudice. Thereafter he again filed these actions in the Pulaski circuit court, with a remittitur of all amounts claimed over $2,900.

The Mutual Life filed its answer, in which it denied the material allegations of the petition, and, among other things, pleaded that Dause became afflicted with pulmonary tuberculosis, and on February 23, 1922, he filed with the Mutual Life notice of disability supported by affidavit of his physicions that he was totally and presumably permanently disabled from continuously performing any work for compensation, gain, or profit. The proof and claim were accepted by the Mutual Life, and thereupon it waived the payment of the premiums which fell due on March 21, 1922, and March 21, 1923, and paid Dause disability benefits under the policy at the rate of $50 per month from February, 1922, up to and including March 21, 1924; that on March 21, 1924, the Mutual Life, under the provisions of the policy, demanded of Dause proof of the continuation of his disability, and had him examined by physicians, and the physician made his report to the Mutual Life that Dause's tubercular affliction was arrested and that he was able to engage in work for compensation, gain, or profit. Thereupon the Mutual Life refused to waive the premium due March 21, 1924, and refused to continue payment of monthly disability benefits under the policy; that at all times since March 1, 1924, Dause has been able to and has engaged in work for compensation, gain, or profit and has followed gainful occupations, and since March 1, 1924, Dause has not been totally and permanently disabled by bodily injury or disease, so that he has been permanently, continuously, and wholly prevented thereby from performing any work for compensation, gain, or profit, or from following any gainful occupation; that in March, 1924, it notified Dause that the annual premium on the policy would be due on March 21, 1924. Upon Dause's refusal to pay such premium, the Mutual Life notified him that the policy had lapsed for nonpayment of premiums and had gone to extended term insurance; that Dause failed and refused to pay the premiums due on the policy on March 21, 1924, and since such time has failed and refused to pay any of the annual premiums due thereon, and has made no demand upon the Mutual Life for disability benefits under the policy, and has not furnished it with any proof that during such time he was totally and permantly disabled, and that it has not had an annual medical examination made of Dause since 1924.

By subsequent pleadings the issues were made and

the case heard before a jury and resulted in a verdict and judgment for Dause for the sum sued for. The Mutual Life appeals.

Numerous alleged errors are assigned for grounds of reversal, among which it is earnestly urged that the court erred in failing to sustain the Mutual Life's motion for a peremptory instruction because Dause was not totally and permanently disabled from March, 1934, until January, 1933.

According to the evidence of Dr. Peabody and Dr. Coleman, Dause's tubercular condition had become arrested and his disability removed. On the other hand, according to the evidence of Dr. Gibson and Dr. Jasper who testified for Dause, his tubercular condition had not become arrested, and there was practically no change in his condition from 1922 to 1932, at the time of the filing of the action. But, aside from the testimony of the various doctors who testified for the respective parties, Dause's own testimony and conduct is, indeed, significant. He admits that he made no response to the letter he received from the Mutual Life date of April 8, 1924, quoted above, and that he made no payment of the premiums nor furnished the Mutual Life with any proof or claim of disability and secured employment and was employed from 1925 up to and including a part of the year 1929, during which time he received for his work above average wages.

It is insisted for Dause that the evidence of Mr. Rottenberger, paymaster of the Corcoran-Brown Lamp Company, Dause's employer, was incompetent. Rottenberger testified from the records of the company respecting Dause's wages received during the time he was employed for the Corcoran-Brown Lamp Company. Conceding, without deciding, that the testimony of Rottenberger was incompetent, the allegations that Dause was employed and received fair wages for his services is sustained by his own testimony. He testified that he began working for Corcoran-Brown Lamp Company in the spring or summer of 1926, and worked until January, 1929. Respecting the wages received for his work, we note the following questions and answers thereto:

"Q. Did you ever earn as much as $75.00 per week? A. Yes, sir.

"Q. Did you ever earn over $100 in any week? A. Yes, sir.

"Q. During any year that you worked for that company did you average as much as $50.00 per week? A. I don't know.

"Q. Did you work any over time? A. Yes, sir.

"Q. How many hours per day did you work? A. I worked different hours usually 8¾."

Respecting the letter of April 8, 1924, quoted above, we note the following questions and answers thereto:

"Q. When you received that letter, did you make any complaint to the company? A. No, sir.

"Q. From the day that you received that letter in the early part of April, 1924, on down to the time that you filed this suit, in September, 1932, did you ever complain to the defendant company about the position it had taken in refusing payment of the disability benefits, or file any notice of disability, or attempt to file any notice of disability or proof with the company? A. No, sir.

"Q. Before filing this suit in September, 1932, did you make any demand on the company for the payment of the benefits that you claimed were due you? A. No, sir."

With reference to Dause's statements contained in his application for reinstatement of his policy in 1926, he denies that he made any written application. However, he admits talking to Dr. Coleman about the matter, but denied his signature to the application. Dr. Coleman testified positively that he did sign the application, and made the answers to the questions as shown therein. It is also shown that the signature to the application for reinstatement is very similar to Dause's admitted signatures shown in his application for the original policy in 1921. We further note that Dause admitted that in his testimony in the previous trial in federal court he stated that he did not know whether or not he signed the application. However, he says that, after thinking the matter over, he is sure he did not sign it. He assigned no reason why he changed his mind as to whether he did or did not sign it. It is not shown that Dr. Coleman was an agent for the Mutual Life or otherwise interested in it. We can conceive of no reason or inducement for Dr. Coleman to testify falsely about this matter or have forged such record or application.

In the circumstances, we are constrained to the conclusion that Dause made the answers contained in the copy of the application filed by Dr. Coleman.

Respecting Dause's disability, Dr. Gibson said: "My opinion then was that he had pulmonary tuberculosis and I think he still has it. * * *" The doctor was asked to tell the jury whether or not Dause was totally disabled from performing the duties of a farmer. Answer: "I think so." He was further asked whether or not in his opinion had there ever been a time since he first examined Dause in 1922 that he was able, in justice to himself, to perform or do any kind of work or to follow any gainful occupation. Answer: "I can't answer that question, Judge; there might be some business or occupation that required very little and light work, but anything that required any manual labor or any hard work at all, in my opinion he has not been able to do that." We note the following questions and answers thereto from the testimony of Dr. Jasper:

"Q. Since you first examined him in 1922 state to the jury whether or not he has been able to perform manual labor or to do farm work of any sort? A. No, I don't think so.

"Q. Since 1922 has he ever been able to conduct or operate a farm or do the work necessary to be done on a farm? A. No, sir.

"Q. Doctor, I'll ask you to state to the jury whether or not in your opinion the plaintiff, Mr. Dause, since you first examined him in 1922, has been permanently, continuously and wholly disabled and prevented thereby from performing any work for compensation, gain, or profit and following any gainful occupation? A. Yes, sir, I think he has."

Contrary to the opinions and conclusion of the doctors, we have Dause's testimony in which he admits that he did work from 1926 to 1929, earning a livelihood for himself and family. It is not shown that he was confined to his bed or room or had any medical treatment other than a casual examination by the doctors. He was active and working all this time. It may be true, however, that Dause had not completely recovered from his tubercular condition, but his own testimony discloses that his disability, if any, at the most was only partial. It must be remembered that under the

disability clause of his policy he was entitled this compensation only in case of total disability. In our view, there is no evidence conducing to show that he was totally disabled from performing any work even as a farmer. Conceding, without deciding, that his work during the interval from 1924 to 1932 was light work, and perhaps lighter than that of farming, yet it is common knowledge that a man who is able to perform the work which he did, and active as he was, was not totally disabled as a farmer or otherwise, within the meaning of the policy. Opinion evidence or conclusion of expert witnesses will not control when not supported by the proven facts. The undisputed facts are contrary to the opinions of the doctors who based their conclusion upon their physical examination of Dause. In Dossenbach et al. v. Reidhar's Ex'x et al., 245 Ky. 449, 53 S. W. (2d) 731, 737, it is said:

"The opinions of expert witnesses upon subjects of common knowledge have no more probative value than the opinions of other witnesses. * * * When an expert's opinion is rested upon the simple facts of life and everyday occurrences, it possesses no more weight or value than that of any other intelligent person. Upon matters of common knowledge and everyday experiences, the ordinarily intelligent man can make the appropriate deductions and derive the correct conclusions."

See, also, Consolidated Coach Co. v. Eckler, 248 Ky. 309, 58 S. W. (2d) 582; Equitable Life Ass. Soc. of U. S. v. Burns, 254 Ky. 487, 71 S. W. (2d) 1009, decided March 20, 1934.

The facts disclosed by this record, viewed in light of the authorities herein cited, it is our conclusion that there was no evidence conducing to show that Dause was presumably, totally, and permanently disabled in the meaning of the policy, and the trial court should have directed the jury to find a verdict for the appellant. It is not necessary to pass on other questions discussed in the briefs of the respective parties.

The judgment is reversed and remanded for proceedings consistent with this opinion.

The whole court sitting.