# Prudential Insurance Co. of America v. Howard's Assignee.

(Decided March 12, 1935.)

N. R. PATTERSON and TYE, SILER, GILLIS & SILER for appellant.

E. B. WILSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The decision turns upon the sufficiency of the evidence to sustain a verdict for $3,000 in this suit on the group insurance policy covering employees of the Louisville & Nashville Railroad Company, which has been before us a number of times.

The insured, W. Rice Howard, was covered by the policy from its issuance in February, 1925, until February 1, 1929, when it lapsed for nonpayment of premium. It is conceded that by 1931 he had become totally and permanently disabled through a species of paralysis called "paralysis agitans." The question is whether the evidence tended to show that the disability existed during the life of the policy. The contract of insurance provided:

> "If the said employee, while less than sixty years of age, and while the insurance on the life of said employee under said policy is in full force and effect, shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly, continuously and permanently unable to perform any work for any kind of compensation of financial

value during the remainder of his or her lifetime, the amount of insurance payable at death from natural causes will be paid to said employee in monthly installments," etc.

While working as a locomotive fireman in 1910, Howard fell or was knocked from his engine to the ground and received a severe blow and deep cut on his head which rendered him unconscious for forty-five minutes and kept him from work for about three months. In 1918 he was promoted to be an engineer and continued regularly as such on active duty until December 27, 1928, when he was so injured in his foot by the accidental discharge of a shotgun as to require its amputation a few inches above the ankle joint. For this loss insured was paid $500, the indemnity specifically provided for the loss of a foot. Howard paid no more premiums on the policy and it lapsed on that account. Nearly four years later he made a claim under the policy for the benefits provided for total and permanent disability, as in the portion of it quoted above. This was and is based upon the contention that before the policy lapsed that disability had existed through the development of the injuries suffered in 1910. Afterward the insured assigned his claim to his father and he has prosecuted the suit as assignee.

Howard testified that he had not been physically disturbed after his accident in 1910 until he began to have severe headaches in the latter part of 1927. He seemed to have a "pressure on the skull," as he expressed it. In the fall of 1928, he noticed that he couldn't talk as well as he once could and that there was something wrong with his left arm. It was nervous and he couldn't use it as he once could. However, he testified as to his effectiveness as an engine-man during these years, first as a fireman and later as an engineer. After he had secured an artificial foot in the early part of 1929, he sought reinstatement as an engineer, as he felt he was able to do the work, although his nervousness and headaches bothered him. But he was turned down because he was disqualified under the rules of the company on account of the loss of his foot. When he made claim for the specific indemnity under the policy, he said nothing about any paralytic condition or impairment. In October, 1929, Howard applied for insurance in another company and in his application declared that he was then in perfect health and had no

other "illness, disease, operation, or injury." He also answered, "No," to the following question:

> "Have you ever suffered from any complaint or affection of the brain or nervous system (fits, nervous breakdown, insanity, loss of consciousness, spinal disease, delirium tremens, sun stroke, difficulty with eye sight or hearing, etc., included)?"

The plaintiff, the insured's father, testified that he never noticed any nervousness in him or change in speech until after he had lost his foot. Testifying in January, 1934, Dr. Wilson deposed that he had seen Howard occasionally the past four or five years, but was not called professionally until after his foot was cut off. As to how long afterward he was very uncertain. It is a fair deduction that it was after the policy had lapsed, which was five years before he testified. At that time the doctor found a scar and some depression on Howard's skull and noticed he had a nervous and mental condition with a decided tremor and a change of disposition with more or less paralysis. This was attributed to a brain injury. The doctor expressed the opinion that "there is a strong likelihood" that the injury suffered in 1910 caused Howard's trouble. However, he further testified that people have the same condition who never had received any blow on the head. The doctor's testimony is not very satisfactory, which is probably due to the fact that he was depending wholly upon his memory as to the patient's condition five years before and to an uncertainty as to the pathological development. He finally stated: "It is my opinion he was disabled on the day his leg was taken off."

Dr. Logan did not see Howard until 1931, at which time it is conceded that he had become totally disabled through paralysis. Upon a hypothetical question (which magnified conditions beyond the evidence) he expressed the opinion that his total and permanent disability had begun prior to February, 1929. He did not say the patient was so disabled at the time. It was stipulated that Dr. Howard would give a similar answer to the question. This was all the evidence for the plaintiff.

The defendant's proof is that in the summer of 1929, Howard diligently endeavored to secure reinstatement as an engineer. Dr. Evans, the railroad company's district surgeon, examined him and found nothing to indicate paralysis or a palsied condition, al-

though he did not make a minute physical examination, since he knew that the rules of the company disqualified a man with an artificial foot. He did not recall that Howard had mentioned having noticed any shaking of his hand or impairment of speech. The doctor expressed the opinion that the accident of 1910 did not cause Howard's present condition, and explained that callouses are formed when there is a bone injury, such as the loss of a foot, which might cause a brain pressure, and it would ordinarily show up in six to twelve months. The medical authorities and his own experience taught that impairment of the brain and powers of locomotion would not show up as long as eighteen years after an injury. The railroad officers testified that Howard's services had been satisfactory until he lost his foot, and that while such loss would not actually incapacitate a man from running an engine, there was a rule against it. Howard himself had testified to the same effect, and stated that he could have run an engine all right, although he would have been slow getting off and on. The officers testified that when seeking reinstatement in 1929, Howard seemed to be in good physical condition other than having only one foot.

Dr. Siler had examined Howard to see if he was able to stand the amputation of his foot and found that his condition was then good. He was given a complete history at the time, but was not told anything about Howard having received the blow on the head in 1910. He made the examination when Howard applied for insurance in October, 1929, and found no manifestation of paralysis nor anything wrong with him except the loss of his foot.

An insurance company will not be permitted to cancel its contract and avoid liability when an insured has received an injury or is suffering such an illness during the life of the policy that is likely to or which does result in disability entitling him to indemnity. Ætna Life Insurance Co. v. Gullett, 253 Ky. 544, 69 S. W. (2d) 1068. But that is not this case. The insured let the policy lapse and waited three years before making a claim under it. Under the terms of his contract the disability entitling him to the indemnity must have existed before it terminated, and the burden rested upon him to establish that fact. We have only his testimony that in the latter part of the term he felt some difference or perhaps impairment in speech, and suffer-

ed with headaches and nervousness. He admits, however, that this did not incapacitate him and that he was regularly at his daily work and performing it in a satisfactory way. He lost his place because of the loss of his foot, and not through any such disability as he now claims then existed. While one doctor expresses an opinion, after a series of doubtful statements or surmises, that he was totally and permanently disabled before he lost his foot, and others that his disability had begun, their opinions are simply this: We now think that the patient's present condition is the result of an injury received twenty-four years ago and the same resulting condition extends back and existed five years ago. This is but a professional inference upon an inference and as such is of little or no value as proof. Sutton's Adm'r v. L. & N. Railroad Co., 168 Ky. 81, 181 S. W. 938; National Surety Co. v. Redmon, 173 Ky. 294, 190 S. W. 1081; Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. (2d) 731. The opinion is rendered worthless by the factual evidence about which there is no dispute, namely, that the insured was working every day at his regular occupation, was in good physical condition when he underwent the operation for the removal of his foot, when he applied for reinstatement as an engineer, and later when he applied for a life insurance policy. He waited three years before claiming otherwise. Kentucky Traction & Terminal Co. v. Humphrey, 168 Ky. 611, 182 S. W. 854; Kentucky Traction & Terminal Co. v. Brackett, 210 Ky. 756, 276 S. W. 828; Provident Life & Accident Insurance Co. v. Harris, 234 Ky. 358, 28 S. W. (2d) 40; Equitable Life Assurance Society v. Arrowood, 253 Ky. 456, 69 S. W. (2d) 984; Equitable Life Assurance Society v. Merlock, 253 Ky. 189, 69 S. W. (2d) 12; Equitable Life Assurance Society v. Burns, 254 Ky. 487, 71 S. W. (2d) 1009; Equitable Life Assurance Society v. Powers, 254 Ky. 770, 72 S. W. (2d) 469.

In United States v. Spaulding, 55 S. Ct. 273, 276, 79 L. Ed. 251, the Supreme Court recently had before it a claim for total permanent disability asserted nearly nine years after a war insurance policy had lapsed, it being alleged to have existed while the policy was in force. The insured had been honorably discharged from the Air Service of the Army in June, 1922, and he had suffered his policy to lapse in November, 1923. There was quite a good deal of substantial evidence of a

diseased condition before his discharge, which resulted in the declaration of the physicians that the insured was not physically qualified for active duty. He was ill for several months afterward. However, he went to work and received substantial compensation in numerous employments. In July, 1924, a special physical examination tested his qualifications for flying, and he was officially certified as qualified. In 1928 he was examined for reinstatement of his insurance but was rejected. The doctors who treated him during the time since his policy lapsed expressed the opinion that he was totally and permanently disabled before the policy terminated. Said the court:

> "The opinions of respondent's medical witnesses that work impaired his health and tended to shorten his life had no substantial bearing upon the question whether total disability while the policy was in force continued during the subsequent years. As against the facts directly and conclusively established, this opinion evidence furnishes no basis for opposing inferences.

> "The medical opinions that respondent became totally and permanently disabled before his policy lapsed are without weight. Clearly the experts failed to give proper weight to his fitness for naval air service or to the work he performed, and misinterpreted 'total permanent disability' as used in the policy and statute authorizing the insurance."

The evidence was held to establish conclusively that the insured had not become totally and permanently disabled before the policy lapsed.

The case is much like Mutual Life Insurance Co. v. Dause, 256 Ky. 448, 76 S. W. (2d) 233, 236, in which we wrote:

> "Opinion evidence or conclusion of expert witnesses will not control when not supported by the proven facts. The undisputed facts are contrary to the opinions of the doctors who based their conclusion upon their physical examination of Dause."

We are of the opinion that the trial court should have directed a verdict for the defendant.

The judgment is reversed.