# Barrowman v. Prudential Ins. Co. of America.

(Decided Nov. 20, 1936.)

J. E. CHILDERS for appellant.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

In July 1925, appellant secured four life insurance policies from appellee, each assuring the payment of

$5,000 in case of death. Each policy provided that, "if the insured shall become totally and permanently disabled either physically or mentally, from any cause whatsoever, to such an extent that he is rendered wholly, continuously and permanently unable to engage in any occupation, or perform any work for any kind of compensation of financial value during the remainder of his lifetime, and if such disability occur * * * while this policy is in full force and effect, and the insured is less than sixty years of age, * * * the company will grant the following benefits."

The benefits provided under the above conditions, were a waiver of premiums, the due date of which occurred after receipt by the insurer of proof of disability. If the disability occurred after the insured had become sixty years of age, the premium waiver was the sole benefit provided; if the total and permanent disability existed prior to the attainment of sixty years of age by the insured, the insurer bound itself to pay 120 installments at the rate of $9.74 for each $1,000 of insurance carried. In this case the disability indemnity or income amounted to $194.80 per month.

Alleging that, prior to the time he was sixty years of age, when all premiums had been fully paid, and on November 2, 1932, he became totally and permanently disabled as contemplated in his policies, appellant sought recovery of $2,922, an amount alleged to be owing him at the time of suit. This suit was instituted on November 22, 1933. Appellee answered by denying all material allegations of the petition, and further pleaded that the disability for which appellee sought recovery did not begin until after January 2, 1933, at a time when appellant was past sixty years of age. That during all the period for which appellant asked indemnity he was following his usual occupation, that of manager of his coal mine.

Other affirmative defensive pleas were interposed, but they need not be referred to unless becoming incidental to the main question discussed. The issues were joined on the one question as to whether or not appellant was totally and permanently disabled, within the terms of his policy, and such proof as was introduced bore alone on that one issue. At the close of testimony on behalf of appellant, appellee moved the court to instruct the jury to find for it. The court passed the mo-

tion and heard proof offered by appellee, and upon its renewal directed the jury to find for the insurer. The court's action in this respect is subject of the appeal here presented.

On July 2, 1925, the date of issuance of the policies to him, appellant was past fifty-two years of age, and was, as stated in his application, "coal operator owner." He was the chief owner of the stock of Barrowman Coal Company, engaged in mining coal at Elkhorn City. He testified that he would be sixty-three years of age on January 2, 1936, which would fix his age on the same date in 1933 at sixty years. He had been engaged in the coal mining business since 1920, and repeatedly insists that he was at all times manager, and sometimes superintendent of his mine, up to and including the time of the hearing of his case.

Quoting from appellant's testimony as to his disabilities, we find him saying:

"In 1930 I had pyorrhea and thought possibly that was the trouble, and went on a little while and had my teeth removed; my teeth hurt me a good deal, so it didn't relieve me so very much, and went on until 1933, I got a little sick and sent for Dr. Newsome * * * he came up and examined me and told me I had leakage of the heart * * * and not to go up on the hill or upstairs or anything like that."

In responding to a query as to what he had been doing, if anything, since 1930, 1931, and 1932, appellant answered:

"Well, I haven't been so very active since that time; the last two years since 1933, since I understood my heart was bad and had to take care of myself if I wanted to stay here long. I haven't done anything to amount to anything; just sometimes go up on the hill; ride up the incline to where the men were working, but never took hold of anything or exerted myself in any way; afraid to do it."

As to his failure to quit work in 1930 when he first felt ill, he said:

"Well, I didn't know I had anything seriously wrong with me; I thought possibly I had a little stomach trouble. I just felt like not doing anything, or walking; I felt kind of fagged out. I can't

stand anything like I used to. Kind of fag out quick.''

He was asked if he was general manager of the mine in the spring of 1933, and answered: ''I am still general manager as far as that goes. I am not active though like I used to be.''

From the proof it seems evident that appellant never ceased to manage his mine during the period from 1930 up to and after January, 1933, and to a. considerable extent to superintend his mining operation. After he had testified in chief, the court permitted, or rather directed, that he be recalled with a view of developing fully ''just what Mr. Barrowman did during the months of November and December, 1932,'' and directed him specifically to tell about his physical condition as bearing on his ability to perform his duties as mine superintendent or president from November 2, 1932, to January 2, 1933. Mr. Barrowman then said:

''The real fact about it I hadn't ought to have had anything to do with it the way I felt about it. But it looked as though I left it up to my boys, what little I had invested in the mines might just go to pieces, and they were not so very well experienced, and it took somebody older to instruct them along different lines.''

Appellant said that he did ''slow down'' in his work, ''all I could say is, I wasn't as active as I used to be by a whole lot in my work. I did not go to the mines unless I knew it was absolutely necessary.''

It is undisputed that appellant during all the period from the alleged date of disability to the time of testimony drew his full monthly salary as manager of the mines. Statements made to the company in June, 1932, and September, 1933, and a letter of October 6, 1933, tend to indicate that the appellant was not then totally or permanently disabled. Nor do his doctors testify to such facts as would authorize us to say that they made a case of such total disability as is contemplated in the policy, under our construction of like provisions in similar policies.

Dr. Newsome examined appellant in April or May of 1933; Drs. Osborne and Johnson in July of the same year. They had no difficulty in finding the trouble and

diagnosing it as endocardytis. Dr. Newsome described a condition that would result from the disease. As to how long prior to the examination the condition had existed he stated:

"Well, I will answer from my experience and what my knowledge is from books about the case, that the condition comes on gradually and in this particular case, I would say at least two or three years. A man in that condition is subject to acute dilation of the heart at any time and any exertion is liable to cause acute dilation."

The doctor said he would classify appellant as totally and permanently disabled from November 2, 1932, to January 2, 1933. He would not answer as to whether appellant could perform the duties of a mine superintendent or manager, not knowing, as he said, what the duties were, but as to going from the road to the mine, or in or through the mine or superintending the work in or about the mine within the period above mentioned, he said: "The same condition existed then."

Dr. Johnson described a heart trouble, so serious that he thought the condition must have existed some time. He says:

"It would not be best for him to perform any active labor or undergo any undue excitement. It might result in death. I could not say just how long he had that condition, that severe condition, he may have had a condition that led up to that when I first saw him, gradually led up to it, or may have led up rather rapidly."

Dr. Osborne found the same serious condition. He said that he must have had heart trouble for several years. It develops slowly. Asked as to his ability to "perform labor" between the dates involved, he said: "I don't think he was capable of working at that time. I mean anything that would cause strain or over-exertion."

There was testimony by one or two lay witnesses as to appellant's permanent disability, but taken altogether and in the light of the testimony of appellant there is a lack of testimony which would authorize us to say that Mr. Barrowman suffered total disability from November 2, 1932, to April or May, 1933. The simple fact appears to be that until appellant learned he was

afflicted with a leakage of the heart, his activities were practically as they had been prior to the day he became aware of his affliction. His testimony cannot be construed to mean anything else.

It is true the physicians testify that his condition was such, for several years prior, that it was dangerous for him to have engaged in strenuous labor. But appellant did not look upon his disability with such seriousness, believing that his inability to do as much work during 1931 and 1932 was due to some trivial local trouble. The opinion of the physicians, the correctness of which we have no reason to doubt, cannot make a case when the proof by appellant shows that he was not incapacitated for the period of time involved. Opinion or expert evidence is neither conclusive nor controlling as against evidence of facts which existed. This is made clear from a reading of Mutual Life Ins. Co. v. Dause, 256 Ky. 448, 76 S. W. (2d) 233, citing favorably Dossenbach v. Reidhar's Ex'rs et al., 245 Ky. 449, 53 S. W. (2d) 731. See, also, Prudential Insurance Company v. Howard's Assignee, 258 Ky. 366, 80 S. W. (2d) 21.

In this case the real issue presented by the pleadings was whether or not appellant's total and permanent disability began and continued prior to the date appellant was sixty years of age, the date of which is hereinbefore set out.

We agree that under the facts the court correctly construed the terms of the policy. See Prudential Insurance Company of America v. Howard's Assignee, supra; Davis v. New England Mutual Life Ins. Co. of Boston, Mass., 263 Ky. 568, 92 S. W. (2d) 822, and cases cited.

It is not amiss to say that proof offered by appellee conduced to show that appellant was about as active during the period in question as he had been theretofore. The evidence fails to establish that he had become totally disabled as contemplated by the policies prior to the time he attained the age of sixty years, and we are of the opinion that the lower court properly instructed the jury to find for appellee.

Judgment affirmed.