## Consolidation Coal Co. v. Marcum's Adm'r et al.

Nov. 25, 1941.

Ed C. O'Rear, Wm. A. Young and Harry L. Moore for appellant.
Hawk & Lewis for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

In August, 1937, Harlan Marcum filed his application for compensation with the Workmen's Compensation Board alleging that on the 3rd day of February, 1937, he was permanently and totally disabled by breathing impure air and gases in the course of his employment as a coal miner in one of appellant's mines. The case was prepared and submitted to a referee of the board who rendered an opinion adjudging Marcum to be totally and permanently disabled in the manner set out in his

application and awarded him the maximum compensation of $15 per week for a period of 400 weeks. On review the opinion and award of the referee was adopted as the decision of the board and on appeal to the circuit court judgment was rendered affirming the findings and award, from which judgment appellant has prosecuted this appeal, contending: (1) that the evidence fails to establish that Marcum became ill in appellant's mine on February 3, 1937, from the inhalation of impure air or noxious gases or from any other cause; (2) the evidence fails to establish that Marcum's disability was brought about or aggravated by the inhalation of impure air or noxious gases but on the contrary establishes conclusively that his disability was caused solely by pre-existing disease. The questions presented require a brief resumé of the evidence.

It is admitted by the parties that from the 7th day of February, 1937, the 4th day after Marcum claimed to have been injured, he was permanently and totally disabled and remained in that condition until his death on February 28, 1940. He appeared as a witness on the 28th of September, 1937, at which time he testified that he was 52 years of age and had been working as a coal miner for 13 years; that on February 3, 1937, he was loading coal in room 15 of appellant's mine at McRoberts, Kentucky; that the ventilation in room 15 was very bad and smoke created by explosives used in shooting the coal was caused to remain in the room by improper ventilation; the air was so devoid of oxygen as to permit his carbide lamp to burn only a part of the time on that day; after becoming sick and weak he quit work at 2:30 P. M. and walked approximately a quarter of a mile to the man station (a place in the mine where workmen assemble for the purpose of being transported out of the mine in cars hauled by an electric motor); he there met his foreman and told him that the smoke and impure air had just about killed him; he rode out of the mine and walked to his home a distance of approximately a quarter of a mile; that he continued to be weak and sick and called a physician, remaining under his care for a period of about 3 months; before the accident he had been in perfect health and able to work steadily to the satisfaction of his employers; immediately after the accident and continuously since, his lungs were affected, his heart beat faster, he was ill and weak and unable to do any work in gainful occupation. His evidence concerning the

bad ventilation and noxious gases was corroborated in full by his fellow workman, Red Scarbro, and to some degree by the testimony of three other witnesses, Will Butrum, Sherman Haskins, and James Haskins. He introduced no medical testimony and no lay testimony other than that recited above.

Appellant introduced Carter Benton, mine foreman, J. M. Fuller, who is referred to as fire boss of the mine, E. P. Wolfe, superintendent of the mine, C. C. Collins, night section foreman, and Zach Adams, assistant foreman. Benton testified that he had been mine section foreman of the mine where Marcum worked for a period of approximately 6 years; it was his duty to look after the safety of the men in his section; he twice visited the room where Marcum was working on February 3, on which occasions he found the room to be well ventilated and the air to be good; Marcum did not complain to him about the ventilation nor did he ever report or claim an injury. From his records he testified that on the day of the alleged accident Marcum worked 7 hours and loaded 5 cars of coal which was shown to be an average day's work; there was no slate fall in that section of the mine to interfere with the ventilating system or circulation of air and there was no interruption in the ventilation on that day; that he had known Marcum about a year and that he had no knowledge of him having been absent from work on account of illness and he never knew of any gas being found in the mine where Marcum worked. Fuller testified that he twice inspected the mine where Marcum worked on February 3 and that the ventilation was good and no gases were found. Wolfe testified that he had been superintendent for appellant for approximately 8 years and the section where Marcum worked was ventilated by an electric fan; that the mine was non-gaseous and Marcum had never given him any notice of his injury until he filed his claim with the Compensation Board; that he had known Marcum for approximately 3 years previous to his injuries and during that time he had worked regularly. Collins stated that he inspected the mine on the night of February 3 and the ventilation was good; there was no slate fall to interrupt ventilation. Adams testified that he worked as assistant mine foreman for approximately 3 months after February 3 and Marcum did not report to him that he had been injured by the inhalation of impure air or gas and that he had never heard any complaint of bad ventilation in the mine.

Appellant introduced 8 doctors, the testimony of each of whom is in entire agreement and accord with the testimony of the others. They agreed that at the various times they examined Marcum he was suffering from an enlarged heart, high blood pressure, and hardening of the arteries, and that the shape of his heart was typical of victims of hardening of the arteries and high blood pressure; that these diseases are insidious in their character and do not reach the stage they found in their examination of Marcum unless present and becoming progressively worse over a period extending from 8 to 12 years, and that none of the symptoms they described could have been brought about by the inhalation of impure air. Unless the patient was rendered unconscious for a period of time in excess of an hour, he would not suffer any physical disability by the inhalation of impure air. Dr. Newman who treated Marcum testified in addition to the foregoing, that Marcum had suffered a slight cerebral hemorrhage brought about by conditions described above; that he examined Marcum on February 7, 1937, 4 days after the alleged accident; that at that time the patient was complaining of weakness of his legs and right arm; that his tongue was thick, he could not enunciate properly and his face was slightly distorted. That in disclosing the history of the case Marcum did not state to him that he had become ill from the inhalation of impure air.

We cannot believe that counsel for appellant are serious in their contention that there is not sufficient evidence to support the finding of the board in respect to the presence of impure air and gas in the room where Marcum worked on the day he claimed to have been injured. Both Marcum and Scarbro testified directly to that effect, and, no matter how much testimony there may be to the contrary, the direct evidence of those two witnesses was sufficient to sustain the finding of the board in that respect. As stated in the case of Leckie Collieries Co. v. Branham, 275 Ky. 748, 122 S. W. (2d) 776, the Workmen's Compensation Board is vested with broad discretionary powers, and, in a review of the findings of fact by the board, the only question for our determination is whether there was any evidence of a probative and substantial nature to support such findings.

Appellant's second contention merits serious consideration, and is: That since the uncontradicted medi-

cal evidence shows Marcum's disability could not have been caused by the inhalation of impure air or gas, and, since the cause of his disability is necessarily one beyond the realm of common knowledge and exclusively within the domain of expert opinion, such testimony is conclusive of the fact that the disability was not caused by inhalation of impure air or gas. In support of this argument appellant cites the case of Kingston-Pocahontas Coal Co. v. Maynard, 209 Ky. 431, 273 S. W. 34, wherein the medical testimony was quite similar to that found herein. In that case the evidence showed that, while engaged in building a buttress at the company's mine, a rock fell on the claimant, striking him a glancing blow on the head and leg, but leaving no mark or bruise on his body; that at the time and previous to his injury he was able-bodied and capable of earning his living by manual labor; he had suffered no injury prior to the one of which he complained; he was aware of no pre-existing disease and had not found it necessary to consult a physician in regard to his physical condition; since the accident he had been totally incapacitated; and about 20 hours after the happening of the accident suffered a stroke of paralysis. Three physicians, who qualified as experts, testified that the paralysis was due to apoplexy, and that upon examination they found his blood pressure to be dangerously high and his arteries "hardened and very brittle." They stated that those conditions usually develop very slowly and expressed the opinion that the stroke of apoplexy could not have been caused by the accident described by the claimant, since it did not occur until 20 hours after the accident; however, they admitted that the accident might have been a contributing cause of the stroke. The court there held that from the evidence in that case it was not reasonable to draw an inference contrary to the opinions of the experts because the sequence of events before and after the happening of the accident did not contradict testimony of the experts. It is unnecessary for us to discuss the soundness of that decision because we are of the opinion that the inference to be drawn from the sequence of events in this case is, to a slight degree at least, contradictory of the medical testimony. The doctors in this case diagnosed Marcum's disability as hardening of the arteries and high blood pressure of long standing, which diseases, they say, are insidious in their character and, extending over a period of a great number of years, become progressively worse.

It is not unreasonable to infer from that testimony that Marcum would gradually from year to year, month to month, and day to day, have become less efficient in his work and less productive for his employer. But the uncontradicted evidence of the sequence of events shows that on the day it is claimed Marcum was injured and continuously theretofore for a long period of time he was able-bodied, capable of performing, and did perform without interruption or lay-off, the duties of his employment, and that before he became exhausted on the very day he claimed to have been injured, he performed an average day's work in loading 5 cars of coal; that he immediately and suddenly became incapacitated and totally disabled to engage in any gainful occupation, the permanency of which was fixed by his death almost $3\frac{1}{2}$ years later. If this evidence be true, it would not be unreasonable for one to infer that the physicians had been mistaken in their diagnoses. Although the opinions of physicians, skilled in their profession, will be given great weight by the courts, we are of the opinion that neither the medical nor any other of the sciences has yet reached the stage of infallibility; and, where circumstances are shown which, if true, would tend to cast some doubt as to the correctness of the opinion of the experts, the issue resolves itself into one of fact to be determined by the board. Opinion or expert evidence is neither conclusive nor controlling as against evidence of facts. Barrowman v. Prudential Insurance of America, 266 Ky. 249, 98 S. W. (2d) 912.

Wherefore the judgment is affirmed.