## Penn Mut. Life Ins. Co. v. Schrader.

Dec. 5, 1941.

As Modified on Denial of Rehearing Feb. 20, 1942.

Woodward, Dawson & Hobson for appellant.

Lawrence W. Wetherby for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On November 26, 1928, the appellee and plaintiff below, Chester H. Schrader, was and had been since 1920, cashier of the bank of Middletown, a village in Jefferson county, Kentucky, some eight or nine miles east of the city of Louisville. On the day indicated he purchased a life policy from the appellant and defendant below, the Penn Mutual Life Insurance Company, by which it agreed to pay his wife as the beneficiary named therein the sum of $5,000 upon the death of the insured; provided the policy was in force and effect at that time. It also agreed to pay him that amount if and when the accumulations on the policy amounted to that sum, provided it occurred during the lifetime of the insured plaintiff. There was another provision in the policy obligating defendant to pay the insured plaintiff or his committee if he was insane the sum of $50 per month for each month "of insured's total and permanent disability as herein defined," with a waiver of premium during such disability. The disability within the terms of the obligation is defined in the policy as "when the insured is prevented by bodily injury or disease from performing any work or from engaging in any occupation whatever for remunerative profit."

On June 12, 1939, plaintiff filed this action in the Jefferson circuit court against defendant, alleging in his petition the above facts. He further averred that since May 23, 1933, he became totally and permanently disabled, as contemplated by his policy, "to pursue his occupation of banking or to perform the duties required of him as cashier of the bank of Middletown," which arose from an attack of diabetes, and that on January 1, 1934, he resigned his position as cashier of his bank. He fur-

ther averred that he made and furnished proof to defendant of his alleged total disability on January 26, 1939, and he sought recovery against defendant at the rate of $50 per month for the six preceding months, which was in accordance with the terms of the policy provisions permitting recovery at that rate for six months prior to the furnishing of proof of liability. The petition was later amended so as to recover an accrued amount during the intervening time before trial.

The answer denied the material averments of the petition as to defendant's liability within the terms of the policy, and in another paragraph it relied on answers to questions in plaintiff's application for his policy, which was made a part of it, in which he said that his occupation was "Cashier" and "Real Estate." It was then averred that defendant had continuously since his alleged disability performed the duties incident to those of cashier and was in a hospital for some five days or a week while completing a diagnosis of his case. That confinement appears to be the only time when plaintiff's affliction forced him to confinement in the hospital, if indeed his then condition absolutely required it. Plaintiff testified that for some months thereafter he was in bed (presumptively at his home) for about three-fourths of the time, and that thereafter his ability for continuous and uninterrupted work was curtailed to some extent, and which called for short resting periods which he performed by remaining at his home, but which appear to have interfered but little with his general business activities assumed after he retired as cashier of the bank, and which activities consisted largely of rendering some of the services to the bank that he had theretofore rendered, but chiefly in looking after and building up his insurance business. He states that the physician discovered some sugar in his urine, but there is no evidence as to the amount or extent of it, and the physician, according to plaintiff's testimony, advised him that he would live longer if he should retire and be relieved of the responsibility of it (performance of the duties of cashier). He testified that before and after such discovery he looked after and assisted in taking mortgages for his bank and we have examined his testimony in vain to find wherein he performed less labor in that respect following his alleged disability and resignation than he did before then.

While he was cashier, and since then, he handled the

sale of real estate to only a moderate extent for which he received compensation, though small, because of the infrequency of such engagement, but he never qualified himself as a real estate agent by procuring the provided license therefor. The cashier of the bank who preceded plaintiff operated an insurance agency from his office in the bank, which plaintiff took over when he became cashier and for sometime he had a partner, after he became cashier, by the name of Wetherby; but the latter appears to have sold out to plaintiff, who became the sole owner of that agency. Plaintiff operated it after his retirement until it paid him at the time of filing his suit at least $100 net per month. He appears to have broadened his activities in that occupation since his retirement as cashier by devoting more time to soliciting insurance and examining the risks. All the while he has been a notary public and took acknowledgments of mortgages to the bank as such, and—especially since his retirement as cashier—he delivered most of them to the county court clerk's offices for registration, the larger part of which were and are in Jefferson County. In performing those duties he drives his own automobile and makes many other trips from his home in Middletown to Louisville or elsewhere on any business or for any purpose he sees proper. He stated that he usually had a companion along with him, though he did not deny being its driver.

There is a plain effort on the part of plaintiff in his testimony to develop his physical impairment because of his diabetic condition first discovered in May, 1933—so as to entitle him to recover—but we fail to find from his testimony wherein the first symptoms have increased or progressed, and there has certainly been no curtailment of his various activities in which he has engaged since his retirement as cashier. The most of them were performed by him before his alleged attack, except, perhaps, his ceasing to keep the books of the bank, as strictly a banking institution, since his resignation, but which he did prior thereto. He did not testify to any particular duty or duties as cashier of the bank which might contribute to the advancement of this alleged ailment, except, possibly, the necessary confinement. However, since his resignation he has continuously occupied an office in the bank building from which he discharged the various activities which we have related, together with some others, such as vice president of the bank, clerk at auction sales of real estate, trustee for trust estates, and,

perhaps, others. It will thus be seen that plaintiff's case rests entirely upon his conclusion statements as to the facts creating his right of action against defendant, without the aid of any physician who treated him, or any physician testifying as an expert. He does not claim to have lost any weight, or any depreciation of his entire physical make-up. The case, therefore, at best is one where plaintiff was attacked by a disease, which, so far as the record shows, was arrested by the treatment of his physician, and he concluded that his then occupation as cashier of the bank, if continued, might aggravate his complaint and to avert any such possible consequence he resigned his position but continued pursuits theretofore engaged in, as well as many duties he performed for the bank the same as he had theretofore done.

It is strenuously argued by counsel for appellant that we should overrule our heretofore interpretation of such disability risks, by which we applied the disability necessary to recovery to the particular occupation in which the insured was engaged at the time the risk was assumed, notwithstanding its language assuming the risk required the disability to be such as to prevent the insured "from performing any work or from engaging in any occupation whatever for remuneration or profit." Cases and authorities cited by appellant's counsel clearly prove that a majority of the courts of the country construe such provisions as not being confined to the particular occupation in which the insured is engaged at the time of taking out the policy, but that it applies as broadly as is the language itself, i. e., that the disability necessary for recovery must be such as to prevent the insured from performing any occupation for remuneration or compensation.

Our interpretation seems to have started with the case of National Life & Accident Insurance Company v. O'Brien's Ex'x, 155 Ky. 498, 159 S. W. 1134, and we appear to have continued to apply that rule since then, but with later cases veering towards the majority interpretation for which counsel now contend. Therefore, counsel now ask us to overrule the O'Brien and following cases and align this court with such majority interpretations. However, we do not deem it necessary in this case to enter into a discussion of that request, or to assume that task which counsel seeks to impose upon us, since we are convinced that under the proof heard at the trial plain-

tiff failed to prove the necessary disability to entitle him to recover under the terms of his policy as heretofore construed by us.

It will be remembered that he stated in his application two occupations, one as cashier of a bank, and the other as a real estate agent. The right of plaintiff to recover under his policy may not be measured by the amount of business done by him in the occupations in which he was engaged, and which he stated in his application, since he might after procuring the insurance broaden and enlarge both or all of them, or he might abandon some of them and devote all of his time exclusively to the other, or others. Not only so, but plaintiff at the time he procured his policy was engaged in three businesses, one of which he did not mention, i. e., that of insurance, and which he not only continued to pursue after his resignation as cashier of the bank, but largely added to it so as to make the remuneration from it, plus what he received for other services, approach nearly the amount that he was receiving as cashier of the bank.

We have not overlooked the fact that in numerous cases this court has held that total disability, so as to entitle recovery by a policy holder for such risks, does not mean a state of utter helplessness, but it does mean more than mere impairment of normal ability, and that, as said in the case of Davis v. New England Mutual Life Insurance Company, 263 Ky. 568, 92 S. W. (2d) 822, 826: "In the very nature of things, 'total disability' implies that there are lesser degrees of disability, but which lower degrees are not embraced within the policy provision sued on, since it is not a 'sick benefit' provision, but only a 'disability' one, and the extent of disability must be 'total' before the obligation becomes an enforceable one." In that case plaintiff became afflicted with the same disease that attacked plaintiff in this case. In writing the Davis opinion we followed a number of prior cases determining whether or not their facts constituted total disability for which recovery was allowed under the terms of the policy, some of which are, Aetna Life Insurance Company of Hartford, Connecticut, v. Gullett, 262 Ky. 1, 89 S. W. (2d) 1; Consolidation Coal Company v. Crislip, 217 Ky. 371, 289 S. W. 270; Aetna Life Insurance Company v. Daniel, 251 Ky. 760, 65 S. W. (2d) 1025; Traveler's Insurance Company v. Turner, 239 Ky. 191, 39 S. W. (2d) 216, and Mutual Life Insurance Com-

pany v. Dause, 256 Ky. 448, 76 S. W. (2d) 233. Both in the Davis opinion, and in the cases above, other domestic ones are referred to adhering to and applying the same conclusion upon the facts adduced in them. Since the rendition of the Davis opinion we again applied the same appraisement of the evidence to similar testimony in the case of Equitable Life Insurance Company of Iowa v. Hauser, 269 Ky. 374, 107 S. W. (2d) 282.

Were we to hold the defendant liable under the facts of this case we would not only violate, as we conclude, the intention and purpose of the policy contract sued on, but we would make it possible for an insured against such a risk to abandon his present occupation because he might conclude that its duties were too confining and not as conducive to his health as some other occupation in which he might become engaged, and wherein he might not be subjected to the extent of confinement as he was in the surrendered occupation. We deem it unnecessary to enlarge upon the questions at issue, since the cases to which we have referred, as we conclude, settle the question against plaintiff's right to recover herein, notwithstanding it is undeniably revealed by the testimony that plaintiff's physical ability was to some extent impaired as a result of the disease that attacked him. But, as pointed out in our cited opinions supra, the extent of his impairment has not yet reached the stage of "total disability" as contemplated by his policy contract, and as defined by us in those opinions, and which is particularly pointed out and emphasized in the Davis opinion.

Wherefore, for the reasons stated, the judgment is reversed, with directions to sustain defendant's motion for a new trial and for proceedings consistent herewith.

Judge Tilford not sitting.