## Prudential Ins. Co. of America v. Johnson.

(Decided Oct. 27, 1936.)

STRATTON & STEPHENSON for appellant.

H. H. SMITH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

On August 2, 1923, the Prudential Insurance Company of America issued to Alamander Johnson a policy of insurance by the terms of which it agreed to pay him $1,000 in case of death, and the sum of $10 monthly for each $1,000 of the face amount of the insurance under the policy in case of permanent and total disability occurring before the age of sixty. The policy contained

the following provision concerning the waiver of premiums:

> "If the Insured shall furnish due proof to the Company that, while this Policy was in full force and effect, he [or she] at any time after the payment of the first premium on the Policy, while less than sixty years of age, from any cause whatsoever had become permanently disabled or physically or mentally incapacitated to such an extent that he [or she] by reason of such disability or incapacity is rendered wholly and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value, the Company will waive the payment of any premium or premiums under the Policy the due date of which, as specified on the first page hereof, shall occur after the receipt of proof of such disability and while such disability continues. Without prejudice to any other cause of disability the permanent loss of the sight of both eyes, or loss by severance of both hands above the wrists, or of both feet above the ankles, or of one hand and one foot, shall be considered disability or incapacity within the meaning of this provision."

Johnson paid the premiums up to 1930, but declined to pay thereafter. In the year 1934 Johnson brought this suit to recover the monthly payments claimed to be due under the policy. The company defended on the ground that Johnson had never been totally or permanently disabled, and that the policy had lapsed for nonpayment of premiums. The jury found for Johnson in the sum of $836.66, and the company appeals.

It is first insisted that the evidence of total and permanent disability was not sufficient to take the case to the jury. On this question Johnson testified in substance as follows: He lived on the left fork of Troublesome, in Knott county, and was 55 years old. His health became bad in 1926-27. Before that time he ran a store, sawed lumber, and worked on a farm. Shortly after he became disabled he employed Dr. J. W. Duke, of Hindman, to examine him. He reported his disability to the company and made a claim therefor. The company refused to waive premiums or to pay any disability. His trouble was tuberculosis. Since that time he had not been able to perform his daily labor. He worked a

little, but was not able to do so. When he worked a little he would spit blood and would have to go to bed. He began to spit blood in 1926, and had continued to do that. When he worried he would spit up blood and sometimes lie two or three months in bed. A doctor at Hazard doctored him some. He was also examined by Dr. Kelley, who did not tell him anything. He operated a sawmill until 1926 or 1927; then the boys ran it until about three years ago. He owned a farm. He had not plowed any, but had hoed corn a little. In 1934 he was without bread and worked on a pipe line for four or five days and received $2 a day for his work. He only did a little work on his farm in 1933. He had thirteen children; the youngest one about a month old. After working on the pipe line he was taken down for months and months. Dr. J. W. Duke examined Johnson in 1927 and found him suffering from active tuberculosis. In his opinion Johnson had not been able since the first time he saw him to do any work. He could not do any kind of work without endangering his health or life. In his opinion his condition was permanent. Dr. J. E. Hagen testified that he ran a hospital at Hazard. He examined Johnson in September, 1934, and found him suffering from "T. B. of the lungs." In his opinion Johnson had had tuberculosis for a few years. He considered Johnson unable to work. He saw Mr. Johnson the day he testified and would state that he was then a little better. In the state he found him then in he would not advise him to work. He would consider it dangerous to his health and life. He would say that if Johnson took care of himself he might recover. Dr. M. F. Kelley, witness for the defendant, testified that he examined Johnson in February, 1928, and did not find any symptoms of tuberculosis. In his opinion he did not find much difference between Johnson's condition then and his condition now. He examined Johnson the day he testified. He did not find any evidence of lung trouble. In answer to the question, "Is the plaintiff totally and permanently disabled to work?" he said, "I think he can do light work." Iven Childres, a neighbor, testified that Johnson raised a crop every year, could not say if he was working or not, but he was having it done. He had seen Johnson working in the field, could not say that he worked at everything a man could do on a farm. Johnson owned a mill, and he had seen him in 1927 "run the burs or saw, just anything he could do

about the mill.'' In 1934 Johnson worked for a few days laying pipe, and it was hard work. He had heard Johnson say that he had had to fix his water gap after the flood, and was very sick after that. Arnold Childres had seen Johnson working around the mill. He had also seen him hoeing corn occasionally. Johnson worked on the pipe line four or five days.

The fact that Johnson occasionally did light work about the farm, or looked after his mill, or through a series of years worked five days in laying a pipe line, is by no means conclusive on the question of permanent and total disability. Johnson says that he was unable to do much work, and that whenever he did work he would spit up blood and be confined to his bed. His physician expressed the opinion that he had tuberculosis and was unable to work, and that manual work of any kind would be dangerous to his health and life. Even the physician for the company went no further than to say that Johnson could do light work. In view of this situation, it cannot be doubted that the question of permanent and total disability was one for the jury.

In addition to an instruction authorizing nine or more of the jury to make a verdict, and a prefatory instruction giving the terms of the contract, the court instructed the jury as follows:

"The court further says to the jury that the plaintiff, Alamander Johnson, did pay said premiums and sums as stipulated in the contract of insurance by him to be paid up to September 2, 1930.

"Now, if the jury should believe from the evidence that the plaintiff, Alamander Johnson, became disabled to do substantially all the material acts in the transaction of his, the said Alamander Johnson's business, in his customary and usual manner before the 2nd day of September, 1930, and notified the Company and produced proof of claim as in the contract provided, and that said disability continued until January 1, 1935, you will find for the plaintiff the sum of $10.00 per month from the time he became so disabled and notified said company, but not prior to January 10, 1928, up and until January 1, 1935, and not exceeding in the aggregate the sum of $836.66 2/3.

"Unless you so find you will find for the defendant.

"The court says to the jury that 'total disability' as referred to in these instructions and in the policy herein referred to, means an inability to do substantially all material acts in transactions of Insured's business in his customary and usual manner."

By the policy the company agreed to pay or waive premiums only in the event the insured furnished due proof, while the policy was in full force and effect, that he at any time after the payment of the first premium while less than 60 years of age, "from any cause whatsoever, had become permanently disabled or physically or mentally incapacitated to such an extent that he (or she) by reason of such disability or incapacity is rendered wholly and permanently unable to engage in any occupation or perform any work," etc. It will thus be seen that permanent as well as total disability is a prerequisite to a recovery or a waiver of premiums. The instruction did not follow the terms of the policy, but authorized a recovery even if the disability was temporary. It follows that the instruction is erroneous in not submitting the question of permanent disability to the jury.

The policy does not use the word "total" or "totally," but uses the word "wholly," which, of course, means substantially the same thing as "totally." On another trial the court will submit the question whether Johnson was permanently and wholly disabled, and by a separate instruction will define the terms "permanently" and "wholly."

Judgment reversed, and cause remanded for a new trial consistent with this opinion.