## Aetna Life Ins. Co. v. Shemwell.

(Decided April 22, 1938.)

C. C. GRASSHAM for appellant.

JACK E. FISHER and HOLLAND G. BRYAN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

On December 27, 1927, appellee purchased of appellant an insurance policy in the sum of $10,000. For an additional premium or consideration there was attached to the policy a rider which is made a part of the contract, providing for the payment of disability benefits in case of total and permanent disability of the insured, as follows:

"If, before default in payment of premium, the insured becomes totally and permanently disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting any business for compensation or profit, the following benefits will be available:

"When such disability occurs before age sixty a waiver of the payment of premiums falling due during such disability and an income of ten dollars a month for each one thousand dollars of the sum insured payable to the life owner, each month in advance during such disability.

"If, before attaining the age of sixty years the insured becomes totally disabled by bodily injuries or disease and is thereby prevented from performing any work or conducting any business for compensation or profit for a period of ninety consecutive days then, if satisfactory evidence has not been previously furnished that such disability is permanent, such disability shall be presumed to be permanent. In such case, benefits shall accrue from the expiration of the said ninety days, but not from a date more than six months prior to the date that evidence of such disability satisfactory to the Company is received at its Home Office. No benefits shall accrue prior to the expiration of said ninety days unless during that period evidence satisfactory to the Company is received at its Home Office while the insured is living that the total disability will be permanent, in which event benefits will accrue from the commencement of disability. * * *

"The benefits under this provision are conditioned upon evidence of the continuance of total disability of the insured satisfactory to the Company being furnished when requested and upon

representatives of the Company being permitted to examine the insured at any time, but such evidence or examination shall not be required oftener than once a year after the expiration of two years from the acceptance of such evidence. If it shall appear to the Company that the insured is able to perform any work or conduct any business for compensation or profit after a claim has been allowed, then, except in case of the irrecoverable loss of the entire sight of both eyes, or the irrecoverable total and permanent loss of the use of both hands or of both feet, or of such loss of one hand and one foot, disability benefits shall cease."

Appellee became sick in November, 1934, and, upon notice and satisfactory proof as provided in the policy, appellant paid appellee disability benefits until August 18, 1935, in accordance with the contract.

Pursuant to a provision of the policy quoted above, appellant requested appellee to go to Louisville and submit himself to a doctor's examination at the company's expense, and in compliance with this request about September 19, 1935, he was examined by Dr. Charles W. Jefferson and Dr. J. D. Allen, of Louisville, Ky. As a result of this examination appellant concluded that appellee's physical condition was such that he was no longer entitled to waiver of premiums and payment of disability benefits and it ceased to pay same —the last payment having been made on the date stated above, August 19, 1935. On December 12, 1936, appellee brought this suit to recover of appellant the disability benefits provided in the policy, from August 18, 1935, to the date of filing the suit—claiming that his permanent and total disability was and had been continuous and the appellant wrongfully ceased payments of same.

By appropriate pleadings the issues were made and a trial had before a jury in June, 1937, resulting in a verdict and judgment thereon in favor of appellee in the sum of $1,600. Appellant has appealed from that judgment, insisting on a reversal of same upon the grounds (1) that the evidence was insufficient to sustain appellee's claim and that the court erred in refusing to peremptorily instruct the jury to find a verdict for appellant; and (2) the instructions given by the court were erroneous. We will discuss these points in the order stated.

At the time appellee took out the policy he was engaged in buying and selling livestock and maintained a stockyard; and in 1933 he was elected sheriff of McCracken county and during his illness his chief occupation was that of sheriff and he was still engaged in the livestock business.

Drs. Jefferson and Allen were the only doctors who examined appellee in September, 1935, and Dr. Bradley only had attended him since March, 1935, but other doctors had examined and attended him from the beginning of his illness in November, 1934, up to and including a part of the year 1935 and after the suit was brought in December, 1936.

Appellee testified that he became seriously ill on November 20, 1934, and had eight or nine doctors attending him; that he had gas on his stomach and had a fainting spell and fell in the bathroom of the hospital and broke his shoulder; that any kind of excitement "tears me all to pieces"; that he had a bad case of fistula and was operated on and since then he had had no control over his bowels. He went to the Illinois Central Hospital about the middle of January, 1935, and stayed until February 26, 1935, and was so sick that he did not know very much at that time. He then went home and continued under the care of doctors and a nurse. In June, 1935, on the advice of doctors, he went to Dawson Springs and stayed there three months. However, during this period he went home and back occasionally but some one took him in a car. In December, 1935, at the direction of the doctors he went to the hospital at Mayfield and was operated on and stayed three or four weeks and they then took him home in an ambulance. They sent him back to the hospital the second time and he again stayed three or four weeks and had made several other trips to the hospital since then. In November, 1936, he went to Atlanta, Ga., but was driven in a car by another person. He came back and went to bed in the latter part of November, and stayed there until the 10th of January following (1937). He was asked whether or not he had been able to perform any of the duties he was engaged in in December, 1927, at the time the policy was issued and he said he gave orders only but was not able to do any work.

It is further disclosed by appellee's evidence that he had a number of deputy sheriffs and a bookkeeper

in the sheriff's office and these deputies and bookkeeper did practically all the work pertaining to the sheriff's office, except that appellee at times when he was present supervised and directed the work but did practically no work himself except in a supervisory capacity. He also had a manager at his stockyard who looked after that business, and he visited the stockyards occasionally and perhaps did some buying of livestock, but his employee did the substantial part of the work and appellee acted only in advisory capacity in that business. He admitted that large sums of money passed through his office and hands as sheriff which was deposited in the bank and disbursed, but his bookkeeper made out all checks and he signed them.

Dr. E. W. Jackson testified that appellee was afflicted with gastrointestinal neurosis, which means a nervous upset of the intestines, and that he was physically unable to perform the duties of the office of sheriff at the time he, Dr. Jackson, examined him and was treating him.

According to the evidence of Dr. Bradley who had treated appellee from the beginning of his illness almost continuously up to the time of the trial, appellee was physically unable to attend to his duties as sheriff or other business except in a supervisory capacity, and was not able to do a full day's work like he did before he was sick. Dr. Bradley was asked:

"Q. From your observation of him is the condition of his health, his nerves, etc. such as he can transact the duties of his office or business? A. I think he could transact some business, but I don't think he is capable of getting right down to doing the regular work of his office or business."

The evidence of other doctors who testified for appellee was along the same line as that indicated above.

Drs. Allen and Jefferson, to whom appellee was sent by appellant for examination, were introduced in behalf of appellant and their testimony is not as favorable to appellee as the evidence of the other doctors. They gave it as their opinion that appellee is not totally and permanently disabled from performing the substantial duties of his business.

It might be said that the verdict of the jury is contrary to the preponderance of the evidence, yet it is the

well-known rule that the courts are not authorized to reverse the verdict of a jury upon the grounds that it is contrary to the preponderance of the evidence, unless the verdict is so flagrantly against the evidence as to raise the presumption that it was rendered under passion or prejudice. While a mere scintilla of evidence is not sufficient to sustain the verdict of a jury, yet, if there is any evidence of a substantial and probative nature to sustain the verdict, the courts are unauthorized to disturb it.

True it is the evidence discloses that appellee is not totally disabled to perform any work or do anything pertaining to his business, and, if the exact language of the policy be adhered to, a different question might be presented. However, it is the well-known rule that insurance policies like and similar to the one in this case will not be given a strict or verbatim construction.

In Bankers' Life Company v. Green, 256 Ky. 496, 76 S. W. (2d) 276, it was held that although the insured may be able to act in an advisory capacity or be present does not mean that he is able to do the actual work necessary to carry on his office and business. And, in Henderson v. Continental Casualty Insurance Company, 239 Ky. 93, 39 S. W. (2d) 209, it is pointed out that, even though the insured is able to do some of the things pertaining to his office and business, yet if he is not able to do all the work necessary to carry on his office and business, then he is permanently and totally disabled in contemplation of the policy.

In Equitable Life Insurance Company of Iowa v. Hauser, 269 Ky. 374, 107 S. W. (2d) 282, 283, it is said:

"We have a number of times decided that total and permanent disability does not mean utter helplessness or absolute dependency or to be without hope of regaining his health, or of improvement. Davis v. New England Mutual Life Insurance Company of Boston, Massachusetts, 263 Ky. 568, 92 S. W. (2d) 822; Mutual Life Insurance Company of New York v. Dause 256 Ky. 448, 76 S. W. (2d) 233, 236; Consolidation Coal Company v. Crislip et al., 217 Ky. 371, 289 S. W. 270; Ætna Life Insurance Company v. Daniel, 251 Ky. 760, 65 S. W. (2d) 1025; Travelers' Insurance Company v. Turner, 239 Ky. 191, 39 S. W. (2d) 216."

There is considerable evidence in the present case tending to show that appellee was at the time of trial, and had been since the beginning of his illness in November, 1934, unable to attend to or perform the substantial duties of his office as sheriff and other business in which he was engaged at the time of the issuance of the policy.

Viewing the evidence as a whole, it is our conclusion that the evidence is not only sufficient to take the case to the jury but also sufficient to sustain the verdict.

2. Instructions Nos. I and II are complained of. Instruction No. I reads:

"If you shall believe from the evidence in this case that the plaintiff, Clifton Shemwell, was at any time between the 18th day of August, 1935, and the 12th day of December, 1936, totally and permanently disabled by bodily injuries or disease, and thereby prevented from performing all of the substantial acts required of him in his occupation, or substantially conducting any business for compensation or profit, then the law is for the plaintiff and you will so find, but unless you shall so believe from the evidence, the law is for the defendant and you will so find."

The vice complained of in this instruction is that it fixes permanent disability for a short duration of time or a period between two fixed comparatively short dates, and authorized the jury to find that appellee was permanently disabled between the dates set out. It is insisted that this instruction is erroneous under the approved definition of the word "permanent" as meaning "wholly" "continuing" "changeless", etc.

Instruction No. II is complained of because the word "permanently" is omitted and allowed the jury to find for appellee whether he was "permanently" disabled or not.

It may be conceded that Instructions Nos. I and II, standing alone, were erroneous, but in view of Instruction No. III, which reads as follows:

"Unless you shall believe from the evidence that between August 18th, 1935, and December 12th, 1936, the plaintiff was totally and permanently disabled, by bodily injuries or disease, and thereby

prevented from substantially performing any work or conducting any business for compensation or profit, then the law is for the defendant and you will so find,''

it appears that the error in instruction No. II was cured. It is seen that by instruction No. III, before the jury could find for appellee, it was required to believe that he was both totally and permanently disabled. However, as the case must be reversed on another error in the instructions, we express no opinion as to whether the errors complained of in instructions Nos. I and II, read in connection with No. III, are sufficient to authorize a reversal.

It is next insisted that the court erred in failing to define to the jury the terms ''total and permanent disability,'' as used in the policy. It is stated in brief of appellant that motion was entered for the court to define the words ''total and permanent disability,'' but we are unable to find the motion in the record. However, the bill of exceptions recites that defendant by attorney entered such motion and moved the court to define those terms and the court overruled said motion. However, we do find in instruction ''X,'' offered by appellant and refused by the court, language amounting to a definition of the terms ''totally and permanently.'' This instruction tells the jury in substance that, if it believes from the evidence that plaintiff was at any time from the 18th day of August, 1935, to the ——— day of December, 1936, or at any time between said dates, ''continuously and wholly disabled,'' etc. The word ''wholly'' means ''totally'' and the word ''continuously'' means without interruption.

While it is not necessary for the court to define for the jury terms or language when the meaning of them is commonly known and understood by the lay public, this rule is not applicable to language or terms which are not commonly understood by the lay public, but only by persons versed in the subject matter in connection with which they are used. While such terms as ''permanently and totally disabled'' are presumed to be understood by people familiar with the insurance business, or lawyers or other people having training in such subject, yet it is doubtful that the meaning of such terms could be fully understood or appreciated by a lay jury, without the aid of a definition of them.

In Prudential Insurance Company of America v. Johnson, 265 Ky. 767, 97 S. W. (2d) 793, 795, it is said:

"The policy does not use the word 'total' or 'totally,' but uses 'wholly' which, of course, means substantially the same thing as 'totally.' On another trial the court will submit the question whether Johnson was permanently and wholly disabled, and by a separate instruction will define the terms 'permanently' and 'wholly.' " See, also, Commonwealth Life Insurance Company v. Ovesen, 257 Ky. 622, 78 S. W. (2d) 745, and cases cited therein.

Upon another trial of the case the court will modify instructions Nos. I and II as indicated herein and will also define by separate instruction the term "permanently and totally disabled" as used in the policy, if requested to do so.

For the reason stated, the judgment is reversed and remanded for proceedings consistent with this opinion.