**Electa McKINNEY, Appellant,**

v.

**Robert M. HEISEL, Appellee.**

**No. 96–SC–461–DG.**

Supreme Court of Kentucky.

June 19, 1997.

Craig Houseman, Housman & Sparks, Paducah, for Appellant.

James B. Brien, Jr., R. Brent Vasseur, Neely & Brien, Mayfield, for Appellee.

## OPINION

LAMBERT, Justice.

The issue presented is whether it was error to define the word "permanent" in jury instructions which required an affirmative or negative finding of "permanent injury within reasonable medical probability." KRS 304.39–060(2)(b). In the event we determine that the giving of such a definitional instruction was error, we must also say whether the error was prejudicial requiring a new trial.

Appellant brought this personal injury action against appellee for damages arising out of a motor vehicle accident. Prior to trial appellee admitted liability and the only issue for trial was the amount of appellant's damages, providing she met the threshold required by KRS 304.39–060(2)(b). The only basis upon which appellant claimed to have met the threshold was permanent injury and on this point, the evidence was contradictory. Two physicians who testified on behalf of appellant confirmed that she had suffered cervical strain in the collision and stated that while her injuries would be permanent, she would have pain only on an episodic basis. Another physician who examined appellant at appellee's request acknowledged an acute cervical strain but expressed the view that there was no permanent injury. Thus, on the question of whether appellant had suffered permanent injury, an issue of fact was established for resolution by the jury.

In its instructions to the jury the court stated that the jury would need to know the meaning of the word "permanent." It then quoted a definition from Black's Law Dictionary 1025 (5th ed. 1979), a definition this Court recognized in *Smith v. Higgins*, Ky., 819 S.W.2d 710 (1991), as follows:

Continuing or enduring in the same state, status, place, or the like, without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient. Generally opposed in law to "temporary, but not always meaning perpetual."

*Id.* at 711. After deliberating, and in response to an interrogatory which asked whether the jury believed that as a result of the accident appellant had sustained permanent injury in reasonable medical probability, the jury answered no. In due course judgment was entered thereon and appellant's claims against appellee were dismissed with prejudice.

Prior to the court's instructions, appellant objected to any definition of the word "permanent." She further objected on grounds that the definition proposed to be given, quoted hereinabove, contained an element not required by the law, that her injury be "not subject to fluctuation." Appellant contended that the definition required her to prove more than the law required.

In the Court of Appeals appellant made similar arguments, first, that words of ordinary meaning and general usage do not need to be defined because common knowledge and understanding is sufficient, and second, that the definition used did not allow for normal fluctuation in the condition of a permanently injured person.

The Court of Appeals acknowledged the general rule with respect to defining words of ordinary meaning but based on *Smith v. Higgins, supra, Aetna v. Shemwell*, 273 Ky. 264, 116 S.W.2d 328 (1938), and *Commonwealth Life Ins. Co. v. Ovesen*, 257 Ky. 622, 78 S.W.2d 745 (1935), concluded that it was not improper to define permanent. The Court recognized the absence of precedent directly on point and reasoned from the cited authorities. On the question of prejudice, the Court of Appeals acknowledged the general rule that an erroneous instruction is presumed to be prejudicial, but in view of its conclusion that the instruction was not erroneous, did not reach any question of prejudicial versus harmless error.

In numerous cases this Court has held that words or expressions which are commonly understood and are generally simple and well-known should not be defined. *Hardin v. Savageau*, Ky., 906 S.W.2d 356 (1995); *Commonwealth v. Callahan*, Ky., 675 S.W.2d 391 (1984); *City of Elizabethtown v. Caswell*, Ky., 261 S.W.2d 424 (1953); and *Lewis v.*

*Wood*, 295 Ky. 134, 173 S.W.2d 983 (1943). Such a rule is consistent with our preference for bare-bones instructions which may be fleshed out during summation. *Meyers v. Chapman Printing*, Ky., 840 S.W.2d 814 (1992); *Young v. Hunt*, Ky., 781 S.W.2d 503 (1989); *Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981); and *Cox v. Cooper*, Ky., 510 S.W.2d 530 (1974). Moreover, our cases caution against instructions which over-emphasize an aspect of the evidence or amount to a comment on the evidence. *McGuire v. Commonwealth*, Ky., 885 S.W.2d 931 (1994); and *Ford Motor v. Fulkerson*, Ky., 812 S.W.2d 119 (1991). On the other hand, we have found error in the failure to define terms when the law ascribes a particular meaning or when a common term is used as a term of art. *Blair v. Eblen*, Ky., 461 S.W.2d 370 (1970); *Aetna Life Ins. Co. v. Shemwell*, 273 Ky. 264, 116 S.W.2d 328 (1938); and *Commonwealth Life Ins. Co. v. Ovesen*, 257 Ky. 622, 78 S.W.2d 745 (1935).

Rarely is a comprehensive and infallible summary of the law on a particular topic possible, and such is surely the case here. However, the statement which most nearly describes our view on this issue is found in *Commonwealth v. Callahan*, Ky., 675 S.W.2d 391 (1984), quoting Wigmore as follows:

> The removal of the definition of reasonable doubt from the instructions in the Commonwealth is well founded in case and textbook law. In 9 Wigmore, *Evidence*, Section 2497 (Chadbourn rev.1981), there is contained an excellent annotation on the subject, one quote, at page 412, reading: "We do not think that the phrase 'reasonable doubt' is of such unknown or uncommon signification that an exposition by the trial judge is called for. Language that is within the comprehension of persons of ordinary intelligence can seldom be made plainer by further defining or refining. All persons who possess the qualifications for jurors know that a doubt of the guilt of the accused, honestly entertained, is a reasonable doubt."

*Id.* at 393. *Callahan* further quoted Wigmore as follows:

> The effect to perpetuate these elaborate unserviceable definitions is a useless one

and serves today chiefly to aid the purpose of the tactician. It should be abandoned. *Id.* (quoting 9 Wigmore, *Evidence*, Section 2497 (Chadbourn rev.1981) at 408). We recently adhered to this view in *Hardin v. Savageau*, Ky., 906 S.W.2d 356 (1995), and stated that the phrase "by clear and convincing evidence" was neither arcane, esoteric, nor obscure and that jurors would have no difficulty understanding its meaning.

As with the foregoing phrases, the word "permanent" as used herein needs no definition in the instructions. In the context here, where the jury was required to determine whether appellant's undoubtedly modest injuries were permanent, any definition would impermissibly impose upon the jury's understanding and application of the term. An instruction which asks the jury to find from the evidence whether appellant suffered "permanent injury within reasonable medical probability" accompanied by arguments of counsel suggesting which evidence supports or opposes the conclusion of permanence would be sufficient to permit a reliable jury verdict.

Prior to leaving this issue, we feel constrained to directly address what appears to have been the decisional basis of the trial court and the Court of Appeals. Our decision in *Smith v. Higgins*, Ky., 819 S.W.2d 710 (1991), wherein we quoted with approval the definition of "permanent," used by the trial court herein, appears to have been misleading. In the *Smith* case the trial court and the Court of Appeals had rather freely construed another statutory phrase, "permanent disfigurement," to be limited to cases of *serious* permanent disfigurement. In an effort to emphasize our view that the statute should not be so liberally construed, we quoted Black's Law Dictionary definitions of "permanent" and "disfigurement." Through utilization of these definitions, the Court illustrated that neither "permanent" nor "disfigurement" implied a finding of seriousness. Based upon this, the Court reversed both the Court of Appeals and the trial court and directed a literal construction of the statute.

In *Smith* the injury which appellant claimed to constitute permanent disfigurement was five small scars upon her knees.

The injury claimed to be a "permanent injury within reasonable medical probability" here is a cervical strain which may produce episodic bouts of pain and stiffness on a permanent basis. In our view, the threshold requirements and the injuries under review differ sufficiently to prevent having an analysis of one control the other. Blacks Law Dictionary separately defines "permanent injury" in a manner which differs significantly from the definition of "permanent." Moreover, while we did direct utilization of the dictionary definition, with certain modifications, in the determination of disfigurement, no such directions were given with respect to permanence. While we believe *Smith v. Higgins, supra,* to have been correctly decided on matters it addressed, it should not have been interpreted to broadly authorize the definition of otherwise conventional terms.

Our examination of *Aetna v. Shemwell,* 273 Ky. 264, 116 S.W.2d 328 (1938), and *Commonwealth Life Ins. Co. v. Ovesen,* 257 Ky. 622, 78 S.W.2d 745 (1935), leads to the conclusion that they have little bearing on the issue here. The Court of Appeals, despite its partial reliance on these cases, acknowledged that they did not present a definitive answer to the issue on appeal. Briefly, *Aetna* and *Ovesen* were disability insurance cases where the language "totally and permanently disabled" was the issue before the Court. The Court struggled to define the controlling terms appropriate to disability insurance cases and treated the phrase as a term of art. In *Aetna* the Court stated pointedly "it is the well-known rule that insurance policies like and similar to the one in this case will not be given a strict or verbatim construction." *Aetna,* at 330.

As an alternative in the event we believe the court's instruction to have been erroneous, appellee has argued that the instructional error was harmless. For our benefit, he has quoted CR 61.01 and other authorities which we have duly considered.

■ In this jurisdiction it is a rule of longstanding and frequent repetition that erroneous instructions to the jury are presumed to be prejudicial; that an appellee claiming harmless error bears the burden of showing affirmatively that no prejudice resulted from the error. This view was recently expressed in *Drury v. Spalding,* Ky., 812 S.W.2d 713, 717 (1991), with a quotation from *Prichard v. Kitchen,* Ky., 242 S.W.2d 988 (1951), as follows:

> The rule is that generally an erroneous instruction is presumed to be prejudicial to appellant, and the burden is upon appellee to show affirmatively from the record that no prejudice resulted; and when the appellate court cannot determine from the record that the verdict was not influenced by the erroneous instruction, the judgment will be reversed.

*See also Barrett v. Stephany,* Ky., 510 S.W.2d 524 (1974). For the view that erroneous instructions are presumed to be prejudicial, *Prichard* relied on *Trevillian v. Boswell,* 241 Ky. 237, 43 S.W.2d 715 (1931):

> It is a general rule that an error in the instructions is ground for reversal, unless it affirmatively appears that it was not prejudicial.

*Id.* at 718–19, and *Louisville Railway Co. v. Lenehan,* 253 Ky. 489, 69 S.W.2d 1017 (1934):

> "The decided weight of authority is to the effect that the giving of erroneous instructions will be presumed to be prejudicial to appellant, and that the burden of proof rests on appellee to show affirmatively from the record that no prejudice resulted, and when an appellate court cannot determine from the record that a verdict was not probably influenced by an erroneous charge, the judgment will be reversed."

*Id.* at 1018 (quoting 4 C.J. p. 914 § 2883, as amended and extended in its annotations of 1921, p. 379).

■ We are unconvinced by appellee's harmless error argument. The definitional instruction which was given embodied concepts which may well have differed from the jury's common sense, everyday understanding of what is meant by the term "permanent." Certainly there is a possibility the jury read the phrase "not subject to fluctuation" to exclude permanent injury with only episodic pain. In such circumstances *Drury v. Spalding,* Ky., 812 S.W.2d 713 (1991), provides the answer with the view that where

there is a substantial likelihood the jury was confused or misled by the instructions, reversal is required. *Id.* at 717. On the question of harmless error, appellee has failed to satisfy his burden of demonstrating no prejudice to appellant.

For the foregoing reasons, the judgment is reversed and this cause remanded for a new trial.

All concur.