RENDERED: DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0754-MR

DILLON BALDWIN,
ADMINISTRATOR OF THE ESTATE
OF WILLIAM BALDWIN											APPELLANT

v.						APPEAL FROM LAUREL CIRCUIT COURT
						HONORABLE GREGORY A. LAY, JUDGE
						ACTION NO. 18-CI-00524

JOHN ROOT, IN HIS OFFICIAL
CAPACITY AS LAUREL COUNTY
SHERIFF; LAUREL COUNTY
OFFICE OF SHERIFF; AND
UNKNOWN LAUREL COUNTY
DEPUTY SHERIFF, INDIVIDUALLY
AND IN HIS/HER OFFICIAL
CAPACITY AS LAUREL COUNTY
DEPUTY SHERIFF											APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CALDWELL AND K. THOMPSON,
JUDGES.

CALDWELL, JUDGE: The Appellant alleges that the trial court erroneously denied a directed verdict and then incorrectly instructed the jury concerning the propriety of the use of an interstate cut-through by a law enforcement officer when driving a vehicle without lights and sirens activated. Having reviewed the record, the briefs of the parties and the law, we affirm the ruling on directed verdict, but reverse and remand on the instructional issue.

**FACTS**

On January 3, 2017, William Baldwin (Baldwin) was driving north on Interstate 75 in Laurel County. Baldwin was in the left lane of the expressway when he noticed a marked Laurel County Sheriff's Office vehicle rapidly approaching from his rear. The sheriff's vehicle was in the "slow" or right lane.

Baldwin feared that the deputy, despite not having emergency lights activated, was going to pull him over as he was admittedly driving at a speed above the posted limit. Instead, the officer's vehicle passed him, still in the right lane, and then signaled a left turn. The vehicle changed lanes and after entering the left lane in front of Baldwin, applied its brakes and entered a cut-through in the median to execute a U-turn to proceed in the southbound lanes of I-75. Baldwin applied his brakes as he was afraid if he did not, he would run into the rear of the vehicle as it turned into the cut-through. Baldwin's SUV began to slide on the pavement, which was wet from a light drizzle. The SUV left the road, hit a wall,

and started flipping over multiple times, landing in the emergency lane of northbound I-75.

Firefighters and EMS responded to the scene and Baldwin was transported to the local hospital and was later transported to a larger hospital. Surgery was performed on his right shoulder, and he eventually recovered, though he had lingering pain in the joint.

In June of 2018, Baldwin filed a civil complaint against the Sheriff of Laurel County, both individually and as sheriff, as well as the unknown driver of the law enforcement vehicle who he claimed caused the accident on January 3, 2017. Baldwin alleged negligence by the operator of the sheriff's vehicle and negligent training and supervision by the sheriff. His complaint was soon amended to substitute claims for common law negligence and statutory negligence and to name additional law enforcement agencies, apparently because Baldwin was not positive about the identity of the markings on the sheriff's vehicle which he claimed caused his accident.

After a trial, Baldwin moved for directed verdict on liability, which was denied. Additionally, both parties submitted proposed jury instructions to the court. Baldwin's tendered instructions requested that the jury be instructed that law enforcement officers are not to "drive over or across any dividing line on the

-3-

interstate without his vehicle's lights and sirens activated."[1] The trial court refused to instruct the jury as Baldwin requested, reasoning that it was not the act of the sheriff's vehicle turning into the cut-through which caused the accident. The trial court stated that if any act of the officer had contributed to the accident, it was the braking, not the turning, making an instruction pursuant to KRS 177.300 unnecessary. Because the lights and sirens were not activated by the officer, the court instructed the jury that the driver of the sheriff's vehicle owed an ordinary duty of care, as any other driver on the road.

      The jury found in favor of the Laurel County Sheriff and against Baldwin. Baldwin[2] now appeals and alleges that the trial court erred in its instructions to the jury, specifically in not instructing the jury concerning the deputy's use of the cut-through, and that the trial court should have directed a verdict in favor of Baldwin on liability. We affirm the ruling on the directed verdict but agree with Baldwin concerning the instructions. We therefore reverse and remand for a new trial.

---

[1] Kentucky Revised Statutes (KRS) 177.300.

[2] William Baldwin passed away while this appeal was pending before this Court. His son and administrator of his estate, Dillon, filed a motion to be substituted, which was granted.

## STANDARD OF REVIEW

Determinations concerning motions for a directed verdict are reviewed by the appellate court for a determination of whether "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt [or liability], only then the defendant is entitled to a directed verdict[.]" *Mountain Water Dist. v. Smith*, 314 S.W.3d 312, 314 (Ky. App. 2010) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)).

Allegations of error involving jury instructions are reviewed by an appellate court either for an abuse of discretion or *de novo*, depending on the nature of the objection.

> Our review of alleged errors in jury instructions differs, depending upon the type of error alleged. When the error arises from giving an unwarranted instruction or failing to give a warranted instruction, we review the decision for abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015). However, when the error hinges on "whether the text of the instruction accurately presented the applicable legal theory," we review the "content of a jury instruction" *de novo. Id.* at 204.

*Commonwealth v. Caudill*, 540 S.W.3d 364, 366-67 (Ky. 2018).

## ANALYSIS

Baldwin alleges that the trial court erroneously instructed the jury and erred in denying him a directed verdict on liability. We will first review the

determination concerning the motion for directed verdict before considering the argument concerning the instructions given to the jury.

*a. Directed Verdict*

Baldwin argues that the actions of the deputy driver were singularly responsible for the accident and, therefore, directed verdict on liability should have been granted in his favor. We disagree. Under the evidence as a whole, it was not clearly unreasonable for the jury to find Baldwin liable for the accident, and so it was appropriate for the trial court to deny the motion.

Baldwin cites *City of Louisville v. Maresz*, 835 S.W.2d 889 (Ky. App. 1992). In that case, which involves somewhat similar facts, the officer applied his brakes and slowed down in the left lane of Interstate 64 in Louisville in preparation of pulling into a cut-through to execute a U-turn so he could respond to a call. Before the turn could be executed, the citizen hit the rear of the police vehicle. It is that fact – that the cars collided – which causes *Maresz* to be inapplicable to the present case. Though the Court in *Maresz* held that the citizen would have been entitled to a directed verdict on liability of the officer, it did so based upon the facts of the case. The officer in *Maresz* applied his brakes in the left lane, and in doing so caused the citizen to run into the rear of his vehicle.

In the present case, there was no evidence of any contact between the police vehicle and Baldwin's vehicle. The evidence provides that it could just as

-6-

well have been Baldwin's actions which caused the accident as opposed to any actions of the law enforcement officer. Because it was not clearly unreasonable for the jury to find that it was not any action of the officer which caused Baldwin to lose control of his vehicle in the present case, the trial court's determination to deny a directed verdict to him was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

### b. Jury Instructions

Baldwin alleges that the trial court erred in not instructing the jury concerning the impropriety of deputy's actions in using the cut-through to execute a U-turn. The appellee argues that the argument raised now on appeal was not preserved by an objection to the trial court. First, we will consider whether the objection was properly preserved.

CR[3] 51 is clear that one may not later argue error in jury instructions unless the party first objects to the instruction given or denied to the trial court, so that the trial court might have the opportunity to consider the argument.

> (3) No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court

---

[3] Kentucky Rule of Civil Procedure.

> instructs the jury, stating specifically the matter to which
> he objects and the ground or grounds of his objection.

*Id.*

The standard of review on appeal concerning instructions turns on the character of the objection lodged. If a party requests a particular instruction, as here, and is denied, that determination is reviewed for an abuse of discretion. If, however, a party objects to the content of an instruction as given the jury, the review is *de novo.*

Baldwin argued to the trial court that the jury should be instructed concerning KRS 177.300, which declares it to be unlawful to make a U-turn or a left turn except where allowed.[4] The trial court judge refused the instruction, explaining that he believed it was not the act of the deputy's vehicle making the left or U-turn which had caused the accident. Rather, the court itself believed it was the actions of the deputy's vehicle before the left or U-turn was made which

---

[4] It is unlawful for any person (1) to drive a vehicle over, upon, or across any curb, central dividing section or other separation or dividing line on limited access facilities; (2) to make a left turn or a semicircular or U-turn except through an opening provided for that purpose in the dividing curb section, separation or line; (3) to drive any vehicle except in the proper lane provided for that purpose and in the proper direction and to the right of the central dividing curb, separation section, or line; (4) to drive any vehicle into the limited access facility from a local service road except through an opening provided for that purpose in the dividing curb, or dividing section or dividing line which separates such service road from the limited access facility proper.

KRS 177.300.

-8-

led to the accident. Thus, the court determined the instruction concerning the U-turn was irrelevant and unnecessary.

We find that the tendering of the desired instruction, and argument at the bench of why Baldwin desired said instruction to be included in the instructions tendered to the jury, to be sufficient to preserve Baldwin's position. The trial court was clearly aware of Baldwin's argument concerning the instruction on KRS 177.300. Whether the objections lodged by Baldwin regarding the failure to include the requested instruction, and the tendering of the requested instruction, would be sufficient to undertake a *de novo* review of the instructions that were tendered to the jury is not necessary for us to determine. The objection to the instructions by Baldwin was only to the failure to include the requested instruction regarding the unlawful U-turn. Thus, we will not undertake a *de novo* review of the remaining instructions given the jury as we find no such review is necessary.

However, we will review the trial court's denial of the instruction for an abuse of discretion.

> When the alleged error is that a trial court either gave an instruction that was not supported by the evidence or failed to give an instruction that was required by the evidence, the correct standard of review is abuse of discretion. *Id.* at 203. This is because the
>
>> decision to give or to decline to give a particular jury instruction inherently requires complete familiarity with the factual and evidentiary subtleties of the case that are best understood by

-9-

the judge overseeing the trial from the bench in the courtroom. Because such decisions are necessarily based upon the evidence presented at the trial, the trial judge's superior view of that evidence warrants a measure of deference from appellate courts that is reflected in the abuse of discretion standard.

*Id.*

*Kentucky Guardianship Administrators, LLC v. Baptist Healthcare System, Inc.*, 635 S.W.3d 14, 35 (Ky. 2021) (citing *Sargent*, 467 S.W.3d at 203).

The trial court determined, after hearing all the evidence, that the U-turn itself was not the cause of the accident, and so it determined it would not be proper to instruct about a matter which was not relevant. Rather, the trial court instructed the jury on the duty of ordinary care on the part of the deputy, as he had not activated his emergency lights and sirens and was therefore to exercise the level of care required of any driver on the road.

We find the trial court abused its discretion in not giving the instruction requested because, in doing so, the trial court invaded the province of the jury in determining the cause of the accident. The jury could have determined that it was the actions before the U-turn, or not, which caused the accident. The jury could have determined, or not, that it was the actions of the deputy during the execution of the U-turn which caused the accident. Thus, the jury should have been instructed on the propriety of the turn in accordance with the instruction

-10-

requested by Baldwin.

It is axiomatic that a trial court must instruct the jury upon every theory reasonably supported by the evidence.

> The trial court must instruct the jury upon every theory reasonably supported by the evidence. "Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it." *McAlpin v. Davis Const., Inc.*, 332 S.W.3d 741, 744 (Ky. App. 2011) (quoting *Farrington Motors, Inc. v. Fidelity & Cas. Co. of N.Y.*, 303 S.W.2d 319, 321 (Ky. 1957)).

*Sargent*, 467 S.W.3d at 203.

While it may be true that instructions should be fundamental or "bare bones" in civil matters, they must still be complete.

> It is well-settled that Kentucky follows the bare bones approach to jury instructions in all civil cases. *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky. 2005). *See also Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 824 (Ky. 1992). However, fundamental to that approach is that all of the bones must be presented to the jury. Correct instructions are absolutely essential to an accurate jury verdict. The function of instructions is to tell the jury what it must believe from the evidence in order to resolve each dispositive factual issue in favor of the party who has the burden of proof on that issue. *See Webster v. Commonwealth*, 508 S.W.2d 33 (Ky. 1974), *cert. denied*, 419 U.S. 1070, 95 S. Ct. 657, 42 L. Ed. 2d 666 (1974). In light of the importance of correct jury instructions, erroneous instructions are presumed prejudicial. *McKinney v. Heisel*, 947 S.W.2d 32, 35 (Ky. 1997). If it cannot be affirmatively shown that no prejudice resulted from the erroneous instruction, reversal is required. *Id.*

*Insight Kentucky Partners II, L.P. v. Preferred Automotive Services, Inc.*, 514 S.W.3d 537, 549 (Ky. App. 2016).

We must review questions concerning instructions reviewing the evidence with an eye favoring the party who requested the instruction. "When ruling on whether it was error not to give a jury instruction, appellate courts must consider the evidence in a light most favorable to the party requesting the instruction." *Exantus v. Commonwealth*, 612 S.W.3d 871, 888 (Ky. 2020) (citing *Thomas v. Commonwealth*, 170 S.W.3d 343, 347 (Ky. 2005) (citing *Ruehl v. Houchin*, 387 S.W.2d 597, 599 (Ky. 1965))).

It is the province of the jury to determine the ultimate cause of the accident, not the trial court. "The immediate cause, the last link in the chain of causation, is the important one, and it is within the province of the jury to determine whether this link has existence." *Ashton v. Roop*, 244 S.W.2d 727, 731 (Ky. 1951). By failing to instruct the jury concerning the propriety of the deputy's actions in utilizing the cut-through, we find the trial court impeded the jury from considering that it was the U-turn which caused the accident. Such invaded the province of the jury, was prejudicial and was an abuse of discretion. "The issue of causation is ordinarily one for a jury to determine." *Jones by and through Jones v. IC Bus, LLC*, 626 S.W.3d 661, 683 (Ky. App. 2020). Reversal is required.

# CONCLUSION

The trial court properly denied Baldwin's motion for a directed verdict on the question of liability as it was not unreasonable for the jury to determine that it was Baldwin's reactions to the movement of the deputy's vehicle which led to the accident. The trial court did err, we hold, in not instructing the jury concerning the propriety of using the cut-through to execute a U-turn. The failure to so instruct invaded the province of the jury to be the finder of fact and determiner of causation. We remand for a new trial with the jury being instructed in accordance with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:

David Noble
Adrian Mendiondo
Lexington, Kentucky

BRIEF FOR APPELLEES:

Casey C. Stansbury
Curtis M. Graham
J. Austin Anderson
Lexington, Kentucky