RENDERED:  JANUARY 30, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1116-MR

DAVID VORHERR AND DORA
VORHERR                                                                      APPELLANTS


v.           APPEAL FROM KENTON CIRCUIT COURT
             HONORABLE PATRICIA M. SUMME, JUDGE
             ACTION NO. 19-CI-00050


BRETT COLDIRON AND LANA
LONG                                                                           APPELLEES


OPINION AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Appellants, David Vorherr and Dora Vorherr ("the

Vorherrs"), challenge the Kenton Circuit Court's judgment of June 3, 2024, which

memorialized a jury verdict awarding $275,000.00 to Appellees, Brett Coldiron

and Lana Long (collectively "Coldiron"), as monetary compensation for damages

Coldiron sustained to his property.  After considering the briefs submitted,

reviewing the record on appeal, and analyzing the relevant law, we affirm in part, reverse in part, and remand for further proceedings.

## I.     BACKGROUND

In 1999, the Vorherrs purchased property at 1103 Ridgeway Court, in Covington, Kentucky ("the Vorherr property"). Said property includes the dwelling in which the Vorherrs reside as well as a portion of hillside to the south of their home which slopes downward approximately 350 feet towards an adjacent property purchased by Coldiron which is located at 1105 River Hill Drive ("the Coldiron property"). Of specific concern in this case is the northerly portion of Coldiron's land, which runs approximately 200 feet alongside the southern border of the Vorherr property. This land begins with the bottom portion of the hillside and levels off for about 20 feet before reaching River Hill Road, which runs roughly parallel with the property line. Directly across River Hill Road is the Coldiron dwelling.

The underlying case commenced in January 2019 when Coldiron filed a complaint claiming negligent trespass and nuisance because of the progressive landslide, otherwise known as "hillside creep," occurring on the southern portion of the Vorherr property. Coldiron's specifically alleged harm consisted of soil from the Vorherr property moving approximately 10 feet onto the Coldiron property, causing an elevation change and movement of the earth; damage to the

paver stones in his driveway; damage to the front porch facing River Hill Road; debris from the hillside falling into his property; and various other damages to the front portion of the Coldiron dwelling. Coldiron asserted that the Vorherrs knew about the instability of their hillside, had done nothing to remediate its stability, and were actively contributing to the hillside's movement by diverting water runoff from their roof onto the hillside. Over the next few years, the parties engaged in extensive discovery and litigation culminated in a jury trial on April 23, 2024.

At trial, Brett Coldiron indicated that he first began noticing damage to his property around ten years prior, specifically after a time that Sanitation District 1 ("SD1") conducted work on sewer lines on the hillside. Coldiron further asserted that foundational issues with his home began to occur in 2019. Also, around that time, Coldiron first noticed corrugated pipes leading from the Vorherr property which were depositing water directly onto the hillside. Coldiron produced receipts for various repairs to his home starting from 2019, totaling approximately $88,000.00. He also testified about an estimate for further envisioned remediations to his property prepared by Lee Knuppel, a civil engineer with a background in soil mechanics, who testified as Coldiron's expert witness. Those remediations consisted of the installation of a drilled pier retaining wall ("the retaining wall") on the hillside and a gravel drain at the front of Coldiron's home.

Of pertinence to the appeal, David Vorherr was questioned about a previous lawsuit between the Vorherrs and SD1. In that case, the Vorherrs sued SD1 after SD1 went beyond the boundaries of an easement and encroached onto the Vorherrs' hillside, removing trees and vegetation and altering the grade of the land during installation of sewer lines. Vorherr acknowledged that he previously alleged that SD1 made the hillside less stable and that the Vorherrs ultimately settled the case with SD1. Besides transplanting and watering some tree saplings onto the hillside, Vorherr stated he did nothing else to contribute to the hillside's stability after the SD1 settlement. Vorherr testified that the corrugated pipes which were diverting water onto the hillside existed before he purchased the property, and the only change the Vorherrs had made to the pipes was a 10-foot addition to a downspout running from the roof, which they installed to divert water from building up at the foundation of their home.

Mr. Knuppel testified via pre-recorded video deposition. He examined both the Coldiron and Vorherr properties, and in doing so, observed water from a corrugated pipe on the Vorherr property being discharged directly into a head scarp on the hillside.[1] Mr. Knuppel acknowledged that the landslide existed before the Vorherrs purchased their property, but explained that this kind of water discharge, especially when directly into a head scarp, was contributing to the

---

[1] A head scarp is a crack in the earth which forms at the upper edge of a landslide.

-4-

landslide by saturating and lubricating the soil at the bottom of the hill, and, more likely than not, caused the damage to the Coldiron property. In his opinion, building a retaining wall on the hillside, which could be built on Coldiron's land, and a gravel drain in front of the Coldiron property were the only ways to remedy the problem of the landslide and prevent further damage.

At the close of testimony, the Vorherrs moved for a directed verdict, arguing there was not enough evidence to establish a causal link between their alleged action, or inaction, that led to or contributed to the landslide, and that Coldiron was inappropriately requesting equitable relief in the form of a retaining wall being built on the hillside. The circuit court denied Vorherrs' motion.

During the arguments about the jury instructions, counsel for Coldiron requested that any instruction about fair market value be removed because Coldiron's stance was that the costs of repairs were the diminution of value. Accepting this argument, the circuit court removed any language from the instructions regarding an amount not to exceed diminution of fair market value and rejected the Vorherrs' proposed instructions. Counsel for the Vorherrs objected and specifically requested a nominal damages instruction be included in the case that the jury found the diminution of value to be $0. The circuit court denied the request, stating that it was common practice of the local jurisdiction to deal with

-5-

such an issue afterwards, if the jury returned a verdict requiring nominal damages.

The pertinent portion of Jury Instruction No. 4 ultimately read as follows:

> CHECK AND COMPLETE ONLY ONE OF THE FOLLOWING
>
> _____ We, the jury, have found for Plaintiffs, Brett Coldiron and Lana Long, and find that the sum of $_____ is the reasonable cost to repair the damage to their property caused by the damage established by the evidence herein and hereby award that sum to the Plaintiffs:
>
> OR
>
> _____ We, the jury, have found for the Plaintiffs, Brett Coldiron and Lana Long, and find that the sum of $_____ is the change in value of their property caused by the damage established by the evidence herein which is permanent, and hereby award that sum to the Plaintiffs.

The jury returned a verdict in favor of Coldiron, finding that the reasonable cost of repairs was $275,000.00. The Vorherrs filed a motion for a judgment notwithstanding the verdict, reiterating the arguments from their motion for directed verdict and challenging the circuit court's jury instructions in that they did not include the language initially requested in the Vorherrs' proposed instructions. The circuit court denied the motion and this appeal followed.

## II. ANALYSIS

The Vorherrs first argue that the circuit court erred by allowing the matter to advance to the jury because there was not substantial evidence presented

-6-

below which could prove that their action or inaction caused the damage to Coldiron's property. In doing so, they contest the circuit court's denial of their motions for a directed verdict and summary judgment.[2]

When reviewing the denial of a motion for a directed verdict on appeal, "[a]ll evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact." *Lewis v. Bledsoe Surface Min. Co.*, 798 S.W.2d 459, 461 (Ky. 1990) (citations omitted). This Court must then determine whether the verdict is "'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.'" *Id.* (citing *NCAA v. Hornung*, 754 S.W.2d 855, 860 (Ky. 1988)).[3]

Any case asserting negligence "require[s] proof that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the

---

[2] We shall limit our review to the denial of the motion for a directed verdict as a denial for summary judgment "is not reviewable on appeal from a final judgment where the question is whether there exists a genuine issue of material fact . . . [as] once the trial begins, the underlying purpose of the summary judgment expires and all matters of fact and law procedurally merge into the trial phase, subject to in-trial motions for directed verdict or dismissal and post-judgment motions for new trial. . . ." *Transp. Cabinet, Bureau of Highways, Commonwealth of Kentucky v. Leneave*, 751 S.W.2d 36, 37-38 (Ky. App. 1988).

[3] This same standard of review is applied to review of an order denying a motion for a judgment notwithstanding the verdict. *Mountain Water Dist. v. Smith*, 314 S.W.3d 312, 316 (Ky. App. 2010).

plaintiff suffered a harm that was proximately caused by the breach." *Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 26 (Ky. 2023) (citation omitted). Causation consists of but-for causation and proximate cause. *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016). Proximate cause cannot be a question for the jury when it is "'remote and only furnishe[s] the occasion of [an] injury' and, consequently, reasonable minds could not differ as to whether [defendant's breach] was a substantial factor in causing [the] injur[y.]'" *Lhotsky as Next Friend for Lhotsky v. Sutcliffe*, 723 S.W.3d 842, 854 (Ky. App. 2025).

Below, Coldiron presented uncontroverted evidence that the Vorherrs were diverting water onto the hillside. Coldiron also presented evidence, which Vorherr corroborated, that the Vorherrs did nothing which may have contributed to the stability of the hillside after SD1's involvement other than planting and watering some trees. Mr. Knuppel additionally testified that the Vorherrs' action in diverting water substantially contributed to the hill creep and exacerbated the landslide. Based on this evidence, we conclude that a directed verdict was not appropriate and so the circuit court did not err in denying Vorherrs' motion requesting such.

The Vorherrs next argue that the circuit court erred in allowing the jury to consider evidence relating to their previous lawsuit with SD1 and the resulting settlement. They assert Coldiron used this evidence solely to insinuate

the Vorherrs were at fault for not using the entirety of the settlement proceeds to remediate the hillside.

A trial court's decision regarding the introduction of evidence is reviewed under the abuse of discretion standard, or in other words, we consider whether the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

Normally, Kentucky Rules of Evidence ("KRE") 408 prohibits evidence concerning settlement negotiations from being introduced to support liability. However, KRE 408 does not apply when the evidence "is offered for another purpose, such as proving bias or prejudice of a witness" or for the impeachment of prior inconsistent statements. *Miller ex rel. Monticello Banking Co. v. Marymount Med. Ctr.*, 125 S.W.3d 274, 281-82 (Ky. 2004).

Coldiron maintains that references to the SD1 case were not solely for the purpose of attributing liability to the Vorherrs, but rather to challenge their claimed knowledge about the instability of the hillside, exacerbated by SD1, and to provide context to the actions they took to remediate or contribute to the instability. We agree with Coldiron on this point. Given the circumstances, we cannot say the circuit court abused its discretion in allowing evidence concerning the SD1 lawsuit and reference to the resulting settlement to be admitted.

Furthermore, any potential bias was lessened by circuit court's admonishment to prohibit any reference to the amount of the settlement.

The Vorherrs also contest the circuit court's evidentiary rulings allowing the jury to consider the estimates of building a retaining wall on the hillside, arguing that its construction involved specific performance, and thus, was an equitable remedy.

Restraining orders, temporary injunctions, and permanent injunctions as set forth in Kentucky Civil Rules of Procedure ("CR") 65 are extraordinary equitable remedies. *See Maupin v. Stansbury*, 575 S.W.2d 695, 697 (Ky. 1978). Equitable remedies, such as injunctive relief, are considered by the court – not a jury – and they are generally not awarded if monetary damages will provide full relief. *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 211 (Ky. App. 2009); *Imhoff v. House*, 628 S.W.3d 88 (Ky. 2021).

*Sub judice*, had the jury returned a verdict requiring the Vorherrs to construct a retaining wall on their portion of the hillside, we agree that such would have been an equitable remedy, and clearly prohibited under the law. However, that did not occur here; the jury in this case only awarded monetary damages, which appear to have included the funds to build a retaining wall.[4] While Coldiron

---

[4] The Vorherrs argue that, presumably, the $275,000.00 awarded by the jury necessarily includes some, but not all, of the $221,500.00 estimate calculated by Mr. Knuppel ($163,800.00 of which

-10-

initially requested injunctive relief in the complaint, at trial counsel assented that the jury would not be considering any injunctive relief, and they were barred from doing so. As maintained by Mr. Knuppel, his expert opinion was that the construction of a retaining wall on the hillside is necessary to remedy the landslide on the hill and prevent further damage to the Coldiron property. Markedly, Mr. Knuppel explained that if such a wall was built, the way in which the Vorherrs diverted water from their roof would not matter because the retaining wall would direct it away from the Coldiron property. Though there were no certain assurances that the retaining wall could be built entirely on the Coldiron property, we agree with the circuit court that consideration of such an issue, which may involve the imposition of an equitable remedy, could be addressed by the circuit court after the initial issues of liability and damages were tried by the jury. *See, e.g.*, *Boyd v. Schwenke*, No. 2023-CA-0259-MR, 2024 WL 112187, at \*2 (Ky. App. Mar. 15, 2024) (citing CR 65.01).[5]

Ultimately, it appears the jury considered the estimated cost of building a retaining wall to be part of reasonable costs to repair Coldiron's property. We find no abuse of discretion in allowing the estimated costs to build a

---

was the cost of the retaining wall) plus the approximately $88,000.00 Coldiron had already paid in various repairs to his home.

[5] We cite this case for its illustrative value and not as authority. Kentucky Rules of Appellate Procedure ("RAP") 41(A).

retaining wall to be submitted to the jury to assist in contemplation of their award for damages. That said, we do find an error as to how the jury was instructed to consider damages.

The Vorherrs argue, both on appeal and in their motion for judgment notwithstanding verdict below, that the circuit court erred in not utilizing the jury instruction they proposed, namely by failing to include language which limited the amount of damages to the diminution of fair market value of the Coldiron property. For the following reasons, we agree.

The correctness of issued jury instructions involve questions of law, and so we review the substantive content of jury instructions *de novo*. *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015), *overruled on other grounds by University Medical Center v. Shwab*, 628 S.W.3d 112 (Ky. 2021). Erroneous jury instructions are presumed prejudicial, and the burden is on the appellee to affirmatively show from the record that no prejudice resulted. *McKinney v. Heisel*, 947 S.W.2d 32, 35 (Ky. 1997) (citations omitted). Purported errors related to jury instructions must be preserved, either by offered instruction or motion. CR 51(3).

It is well established that the upper limit for damages to real property is total diminution in fair market value to the property; restoration costs may be awarded if the least expensive way to make a claimant whole. *Ellison v. R&B Contracting*, 32 S.W.3d 66, 70 (Ky. 2000). In *Ellison*, the Supreme Court of

-12-

Kentucky recognized the efficacy of an often-utilized jury instruction on damages

to real property that reads as follows:

> If you find for [Plaintiff] you will determine from the
> evidence and award [Plaintiff] the *lesser* of the following
> two amounts:
>
> (A) the reasonable cost of restoring [Plaintiff's] property
> to substantially the same condition as immediately before
> it was damaged by [Defendant].
>
> OR
>
> (B) the difference between the fair market value of
> [Plaintiff's] entire property immediately before and
> immediately after the property was damaged, not to
> exceed _____.
>
> "Fair market value" is the price that a person who is
> willing but not compelled to buy would pay and a seller
> who is willing but not forced to sell would accept for the
> property in question.

*Id.* at 71 (citing J. Palmore & R. Eades, *Kentucky Instructions to Juries*, § 39.12

(Anderson Publishing Co. 1989)).[6]  While *Ellison* commended the use of "lesser

of" language, said language is not always necessary, such as in cases where a

claimant only seeks diminution in value damages.  *See Mountain Water Dist.* 314

---

[6] The current version of this treatise contains substantially the same instruction, the only change being the addition of the following term:  "Provided however that unless you are satisfied from the evidence that the restoration in question would restore the entire property to its fair market value immediately before the damage, you will disregard [A] and award [Plaintiff] a sum under [B.]"  D. Cetrulo & J. Palmore, *Kentucky Instructions to Juries*, 6th Ed., § 39.17.2 (Anderson Publishing Co. (2025)).

S.W.3d at 314-16 (discussing *Ellison*, 32 S.W.3d 66 and *Lichtefeld v. Mactec Eng'g & Consulting, Inc.*, 239 F. App'x 97, 102 (6th Cir. 2007)). Even in cases where "lesser of" language is not used, diminution of fair market value is still a steadfast cap on the total amount of damages which can be awarded, and so including language which states damages "cannot exceed" a certain amount is one way to clarify this rule. *See, e.g.*, *id.* at 314.

In *Ellison*, the Supreme Court also held that "[b]ecause a jury could find that a particular injury to the property rights of a plaintiff resulted in no decrease in the property's fair market value, trial courts should, in appropriate trespass cases, also instruct juries that, even if the plaintiff suffered no actual damage as a result of the trespass, the plaintiff is entitled to nominal damages.[7]" *Ellison*, 32 S.W.3d at 71.

As an initial matter, Coldiron asserts that the Vorherrs did not preserve their argument challenging jury instructions because they did not raise an appropriate objection during the conference about jury instructions. We disagree. Not only did the Vorherrs raise an objection regarding the inclusion of a nominal damages instruction at that time, but their proposed instruction was identical to that

---

[7] A common instruction for nominal damages includes terms substantially similar to the instruction previously discussed, along with a definition, such as "'Nominal Damages' are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he or she is entitled to compensatory damages." *See* D. Cetrulo & J. Palmore, *Kentucky Instructions to Juries*, 6th Ed. § 39.18 (Anderson Publishing Co. (2025)).

-14-

of the instruction cited to in *Ellison*, 32 S.W.3d at 71. CR 51(3); *see also Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 711 (Ky. 2020).

Coldiron further argues that the jury instruction utilized by the circuit court was proper under *Ellison* in that it can be inferred that the costs of restoration is the diminution of value; Coldiron was not required to present evidence of fair market value; and the Vorherrs failed to present sufficient evidence on diminution of fair market value themselves. We agree with Coldiron's interpretation of *Ellison* to the extent that costs of restoration can be used as inferential evidence to diminution of value. 32 S.W.3d at 76. However, the problem remains that the circuit court did not set a clear limit to damages in the jury instructions. Coldiron was presumably requesting the entirety of the approximately $88,000.00 in repairs paid towards his home as well as the entirety of the $221,000.00 estimate proffered by Mr. Knuppel,[8] but this is not reflected sufficiently in the jury instructions. By removing the language which set damages "not to exceed" a certain amount, the jury was provided no clear cap to damages and may have returned a verdict in gross excess of any figure which could reasonably be calculated to be a diminution of fair market value – theoretically, even a figure in excess of the *entire* fair market value of the Coldiron property prior to sustaining any damages. The circuit court's

---

[8] We note that Mr. Knuppel's estimate included a sum uncertain in the form of contingency fees which he testified could vary by some degree.

-15-

additional decisions to exclude "lesser of" language or a nominal damages instruction further exacerbated the lack of clarity that the jury was confined to diminution of fair market value. Given the circumstances, the instructions as utilized by the circuit court appear to be prejudicial towards the Vorherrs, and Coldiron has not affirmatively convinced the Court otherwise. Therefore, we find the circuit court erred in not including any limiting language regarding diminution of fair market value in Jury Instruction No. 4

### III.    CONCLUSION

Accordingly, we affirm the circuit court's order denying the Vorherrs' motion for a directed verdict, but reverse the June 3, 2024, judgment adopting the verdict of the jury and the August 30, 2024, order denying the Vorherrs' motion for judgment notwithstanding the verdict to the extent that a new trial is appropriate on the sole issue of damages. Therefore, we remand for a new trial consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANTS:

Sean Quigley
Lexington, Kentucky

BRIEF FOR APPELLEES:

Steven A. Taylor
Fort Mitchell, Kentucky